THOMAS FERRIS *v.* SAMUEL HENDERSON and Wife, and
Others.

1. The statute of limitations is not a bar to a claim for services rendered, forty
years before bill filed, by a negro who from ignorance supposed himself to be a
slave, the person to whom the services were rendered having suppressed the
truth that the complainant was free, and having falsely asserted that he was his
slave, whereby he procured the negro to serve him.

2. Where there is fraud, the statute does not begin to run till the fraud is discovered.
It does not necessarily begin to run from the time that the facts which constitute
the fraud become known; for, although ignorance of the law excuseth not, yet
Courts must have regard to the circumstances and condition of parties on whom a
knowledge of facts is to operate.

APPEAL from the District Court of Allegheny, in equity.

*Sept.* 20.   The bill in this case was preferred by Thomas Ferris,
who was born in 1774, the slave of Joseph Becket, the ancestor of
the defendants.   Ferris alleged that he became free in 1780, by the
neglect of Becket to have him duly registered; that in consequence
of Becket's fraudulently concealing that fact from him, and pre-
tending and threatening, that if the said Ferris did not serve him
as a slave until 1st January, 1810, he would hold him as a slave for
life, he, Ferris, ignorant of his rights, remained in slavery to Becket.
He also alleged that it was not until October, 1846, he discovered
that his freedom had been unlawfully withheld from him by Becket
until the end of 1810.   The bill prayed an account and discovery,
and satisfaction in respect of the services thus fraudulently obtained
from the complainant.

To this bill these defendants demurred, but their demurrer being
overruled, they put in an answer, and afterwards a plea of the
statute of limitations.   This plea was sustained by the Court below,
and the bill was dismissed with costs.   The complainant appealed
to this Court.

The opinion of the Court below, which was adopted by the appellees
as their argument here, was delivered by LOWRIE, Justice, to the fol-
lowing effect:

" The case is now presented for our consideration by means of a
plea of the statute of limitations, to which we have no formal repli-
cation, but are referred by the counsel, for a substantive replication
to the facts appearing in the bill.   Though the statute of limita-
tions may be set up by way of plea, when the excuse for the
plaintiff's delay is not set out in his bill, yet the proper mode of

taking advantage of this objection when the plaintiff's excuse does so appear, is by demurrer, and the proper time for raising this question was, when the demurrer was before the Court for consideration: Blanchard on Lim. 66, 73; Hoare v. Peck, 6 Sim. 51; Fyson v. Pale, 3 You. & Col. 266; 1 Danl. Ch. Pr. 621.

"But the counsel have thought proper to raise the question by means of a plea, and on this we decide it: treating it, however, as a demurrer, by looking to the allegations of the bill for the facts necessary in a replication."

His Honour then stated the facts charged in the bill, to the same effect as in our brief statement of the case, and proceeded:

"If there are any other allegations in the bill that have any bearing on this point, I have failed to discover them. Do these allegations contain any such charge of fraud as will furnish a sufficient answer to the defendant's plea? It is well settled that the fraud and concealment necessary to take the case out of the statute must be positive and actual, not constructive: Cole v. M'Glathny, 9 Green, 131; Fairman v. Brook, 9 Pick. 212; 2 Daniels' Ch. 736, 740; 3 Mass. 201. Do the facts alleged here bring the plaintiff within the rule? It will not do simply to charge that the plaintiff was fraudulently held in slavery, or that his right to freedom was fraudulently concealed from him. These are formal expressions that pass for almost nothing, and are found in all the old declarations in assumpsit, without ever being supposed to be true. They can hardly be supposed to mean anything more than that Becket did something which the plaintiff now desires to prove he had no right to do, that is, he held him in slavery when by law he was a freeman—he set up a claim which he had no right to—just the kind of fraud which one party or other in every action at law is guilty of, and which is in fact no fraud at all, yet the fraud here charged is indefinite enough to mean no more than this. The party has a right to something more tangible than this in a replication, before he can be called upon to traverse it.

"But it is charged that the plaintiff's freedom was fraudulently concealed under pretence and threat that if he did not faithfully serve said Becket until, &c., he would hold him as a slave for life. If this allegation is intended to give more definiteness to the charge of fraud, I cannot discover that it has that effect.

"If I am right in these views, then there is no such charge of fraud in this bill as will furnish an answer to the defendant's plea, and the bill must be dismissed.

" But there is another matter that is fatal to the plaintiff's bill in this case.

" The fraud or concealment that will take the case out of the statute of limitations must have been practised or continued until within six years before the bringing of the action. If the defendants have practised no·fraud or concealment within six years, have done nothing to conceal from the plaintiff his rights, and the plaintiff during all that time has had the means of discovering the alleged fraud, then the fraud cannot be set up as a bar to the statute. The mere allegation or even proof that he did not discover the fraud is not enough, if he have the means of discovering it; and that he had this appears plainly enough by the bill itself. Fairman *v.* Brook, 9 Pick. 212; Turnpike *v.* Field, 3 Mass. 201; Blanch'd. on Lim. 81. We cannot help the plaintiff because he has mistaken his rights for thirty-six years, when during all that time he knew or might have known the facts upon which his rights depended: 4 W. C. C. R. 320; Moser *v.* Libenguth, 2 Rawle, 428.

" Here it is not charged that there was any fraud or concealment since the year 1810. Then the statute of limitations began to run; the foot of the master was removed from off the neck of the slave. He was no longer prevented from ascertaining his rights, and the fact that for thirty-six years he neglected to do it, is laches enough to debar him of all equitable relief, even apart from the provisions of the statute of limitations. If the statute had not run out at the death of Becket in 1816, it had at least begun to run, and it does not stop even for harder cases than this: Blanch. Lim. 67; 4 M. & W. 42; 6 Id. 351; 3 Mylne & C. 499.

" For these reasons also the bill must be dismissed."

*Dunlop*, for the appellant.—The bill is maintainable, because, 1. of the fraud: 1 Story's Eq. §§ 184, 210–11; 2. of the necessity of discovery and of an account; and 3. of the right of discovery: 1 Story's Eq. §§ 455, *et seq.*

If the fraud is not sufficiently set forth, they may demur. It is matter of form: Story's Eq. Pl. §§ 453, 484, and note 2.

But it is sufficiently explicit even on demurrer. Every circumstance need not be set forth: Story's Eq. Pl. § 252; 1 Ves. jun. 289; 2 Dick. 489. Replication that work was fraudulently done, and that the fraud was not discovered till within six years, was precise enough: 3 Mass. 201.

The fraudulent acts of Becket are "pointed at," and cannot but convey sufficient notice.  They are these:

1. He claims Ferris as his slave, and that claim consists of such acts as are incapable of and need no specification.

2. He records him in 1781, and pretends to hold him under the Act of 13th April, 1782, such record having been held valid under the equity of that Act in Marchant *v.* Peggy, 2 S. & R. 18; but Becket never took the oath required by the Act.

3. He sells Ferris and buys him back, fraudulently asserting his right to him in the writing, which assertions are sure evidence of fraud: 3 Atk. 752; 1 P. W. 239.

4. He held him by threats, against Ferris's assertion of right to freedom.

But here were a master and a slave—and equity will protect a slave, as well as an infant or lunatic, and from such circumstances will deduce fraud, 1 Story's Eq. §§ 188, 190–1, whether the claimant knew he was lying or not: Doug. 655; Jones *v.* Rees' executors, 4 Y. 109; 1 Cox, 365; 3 Ves. 458; Freeman, 49; 9 Ves. 21; 2 Bro. C. C. 389.

Fraud in the original transaction is in equity a bar to the statute: 2 Story's Eq. § 1521; 2 Madd. Ch. 247; and length of time is no bar to fraud unless discovered within six years: Mit. Eq. Pl. 212; 9 Pick. 244; or plaintiff has the means of discovery: 3 Bro. C. C. 633; 1 P. W. 239; 4 Yates, 109.  There was no one against whom suit would lie, which is a bar to the statute: Levering *v.* Rittenhouse, 4 Wh. 130.

Equity will refuse the defence of the statute where there is such fraud as that it would be against conscience to avail oneself of it: 2 Sch. & Lef. 634; 20 Johns. 47.

*Woods,* for the appellees.

The opinion of this Court was delivered by

COULTER, J.—In Overseers *v.* Kline, 9 Barr, 218, it is said by Mr. Justice ROGERS, "If it appeared in evidence that the defendant knew of the non-registry of Sylph, that she was entitled to her liberty, and fraudulently concealed that fact from her, a different case would be presented.  Or if he had compelled her, taking advantage of her ignorance, to serve him, it would be another matter."  Now all these ingredients are distinctly charged in the bill of the complainant in this case.  Thus it is contained as follows, "nevertheless as your orator expressly charges, that notwithstand-

ing the aforesaid Joseph was well acquainted in the premises, that is, that the orator was free, he the aforesaid Joseph fraudulently concealed the same from your orator, and held him in a state of slavery until 1st January, 1810, under pretence, and a threat, that if your orator did not faithfully serve him, the said Joseph, as a slave as aforesaid until the full expiration of the time last mentioned, that then he, the said Joseph, would hold your orator a slave for life." And the bill continues in substance to aver that the deed of manumission was alleged by the said Joseph to be an act of humanity in consequence of the plaintiff agreeing to serve as a slave for seven years. And the deed itself, which is appended to the bill, wears that complexion. It recites that the said Joseph, from motives of benevolence and humanity, agrees to set free from slavery his *mulatto man*, Thomas Ferris, on condition that he will serve seven years. The bill further alleges that the plaintiff was forced to serve one year after the expiration of the seven years, under the pretence that such was the true meaning of the act of manumission, which he was induced to believe, owing to the unhappy condition of his birth and consequent ignorance. The bill further alleges that the said Joseph Becket died in 1816, testate, leaving a large estate, but that executors or administrators with the will annexed were never qualified, nor any account of the estate returned. That the defendants are his representatives and devisees, and further, that the plaintiff was free at the time he was manumitted, but that he was totally ignorant of that fact until the year 1846, when it was first discovered by him. The respondents do not answer the bill specially, but allege that the charges of fraud therein set forth are not true, and plead that the statute of limitations is a bar to the plaintiff's claim, if he ever had one. The issue, therefore, is upon the validity of the statute, as a bar, under the facts set forth in the bill. The Court below decided that the statute is a bar. The defendant does not answer that the fraud is not sufficiently set out in the bill, nor that the plaintiff had the means of discovering the fraud, but relies altogether on the statute as a bar, in the language of the plea, even if a claim once existed, such as is set out, and prays judgment of the Court thereon. In equity the statute of limitations begins to run from the discovery of the fraud, and not before: Brookbank *v.* Smith, 2 You. & Col. 58; Story's Equity, sec. 1521. In the case from You. & Col., Baron Alderson said, "In cases of fraud the statute runs from the discovery, because the laches of the plaintiff commences from that date, on his

E 2

acquaintance with all the circumstances." The plaintiff may reply fraud to the plea of the statute of limitations, and avoid the plea: Bank v. Forster, 8 Watts, 12. Against a right of action, dependent on a secret fraud, the statute runs only from the discovery of the fraud: Pennock v. Freeman, 1 Watts, 401. But the Court below say that when the party might have discovered the fraud, the statute began to run, and fix the period of its commencement in 1810, when the plaintiff was discharged, and cites a case from Pickering, and from 3 Mass. Rep. These cases doubtless refer to circumstances where the defendants were guilty of supine negligence, and had the means of discovery in their possession. Because all frauds are discoverable by evidence somewhere *in rerum naturâ*. It depends, however, on the intelligence, acuteness, and activity of the party. I have examined the case of Fairman v. Brooks in 9 Pickering, on which the Court below rely. The Court say that the common law allows fraud, if not discovered until within six years before action brought, to be a good answer to the statute; Courts of equity do no more, except that they do not in all cases require a recent discovery to repel the statute, page 244, and in page 246. If the aggrieved party *knew of the fraud when committed*, or had full possession of the means of *detecting it*, which is the same thing as knowledge, it will deprive him of his remedy. In that case the party had in his possession the books and documents which established the fraud. The bill in this case charges actual fraud in the suppression of the truth, that the complainant was free, and in the assertion of a falsehood, that he was a slave, by means whereof he procured the agreement of the mulatto to serve seven years. The reckless assertion of that which is not true, by means whereof a man cheats and obtains the advantage of another, is a fraud: Bree v. Holback, Doug. 655; Jones v. Rees' Executors, 4 Yeates, 109. The nature of the fraud is quite sufficiently indicated, and pointed at in the plaintiff's bill; but that was settled by the decision on the demurrer. In Jones v. Rees' Executors it was held that where there is fraud, the statute does not operate unless it be discovered within the time, nor then when the party is ignorant that the facts constitute a fraud. In this case, the complainant was born a slave, and held as a slave till an advanced period of his life. He belonged to a caste in which ignorance, submission, and oppression was the badge of their tribe. He had the deed of manumission, and to that he clung as evidence of his freedom, and of the humanity and benevolence, as expressed on the

face of it, of his master. Such is the habit of submission and even attachment to which long servitude reduces the mind, that those held in bondage rarely think of questioning the veracity of those who hold them; like the noble animal, the horse, they are obedient to their master's voice, even after they are turned on the common to browse and die. Although ignorance of the law shelters no man, yet we must have regard to the circumstances and condition of people on whom a knowledge of facts is to operate. Although in equity a contract made with a man of sound mind will not be set aside, merely because it is a bad bargain, rash and improvident, yet, if it be made with a person of weak understanding, there does arise a natural inference that it was obtained by fraud, or circumvention, or undue influence: 1 Fonblanque Eq. b. 1, c. 2, § 3. If then such regard is had to the condition of a man, as 'to obliterate and annul his contract, why shall the condition of the plaintiff not account for a want of knowledge as to the facts which made him free? I will not say, but it would seem from the facts stated in complainant's bill, that the knowledge was acquired after he was put on the township for support, when the defendants refused to remunerate the overseers. As to the ultimate liability of the defendants, I intimate no opinion, because the only question raised on the record is, whether, on the facts stated in the plaintiff's bill, and the decision of the Court below on the demurrer, the statute of limitations is a bar. We are of opinion that it is not. *The decree of the Court below is therefore reversed, and the record remitted, with instructions that the defendants answer over to the plaintiff's bill.*

Decree reversed.