## CODDINGTON *v.* RAILROAD COMPANY.

A., pursuant to his contract, surrendered to a railroad company coupons attached to some of its bonds, whereof he was the holder, and took in exchange therefor certificates of preferred stock. The road, with its franchises, was subsequently sold by the trustees of the Internal Improvement Fund of Florida, to pay the bonds, whereof those, which he held, constituted a part. Eight years after the sale he brought this suit to rescind the contract upon the ground of fraud, all the particulars of which were as well known to him when the sale was made as at any subsequent time. *Held,* that his right to relief was barred by his laches and by the Statute of Limitations.

APPEAL from the Circuit Court of the United States for the Northern District of Florida.

The facts are stated in the opinion of the court.

*Mr. D. P. Holland* for the appellant.

*Mr. C. W. Jones, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

The allegations of the complainant's bill, which was dismissed on demurrer, show that prior to 1866 he was the owner of two hundred and fifty-two first-mortgage bonds of the defendant, the Pensacola and Georgia Railroad Company, with several overdue coupons of interest attached; that in 1866 the president of the company induced him to exchange these coupons for certificates of its preferred stock; that he afterwards bought of other persons similar certificates, which had, in like manner,

been received in exchange for unpaid coupons, so that in 1869 he was the owner of $64,085 of these certificates; and that the surrender of the coupons in exchange for the certificates was a fraud practised upon him by the president, on whose representations he relied.

In what this fraud consisted is nowhere stated, except that the company had no authority under its charter to issue such stock, and that if it had, the certificates were invalid for want of the common seal of the company to them.

We do not think it necessary to decide either of these questions. They depend upon either the general statutory law of Florida, or the charter of the company, of both of which the complainant must be presumed to have had notice. He was certainly bound to know that the certificates which he received were without the seal of the company.

There is no allegation of any other fraud, nor of the time of the discovery of any fraud.

The Statute of Limitations of Florida enacts that all actions, except those for recovery of real estate, must be commenced within three years after the right accrues, but in an action for relief on the ground of fraud, the cause of action is not deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud.

All the facts now alleged to constitute the fraud in this case were as well known to the complainant at the time of the transaction as they now are.

The trustees of the internal improvement fund, under the authority vested in them by law, sold out the railroad company, its property and franchises, by way of foreclosure of the mortgage which secured the bonds and coupons of the complainant and others, in 1869, for the sum of $1,220,000. The bill alleges that this was without authority of law, but no sufficient reason for the latter allegation is given.

It does not appear that the complainant ever made any demand upon these trustees for the share of this money due him on account of these coupons, or notified them or the railroad company of his intention to rescind the contract. As far as this bill shows, his first action or notice of intention to rescind the contract or to assert rights to or under the coupons is this

suit, brought in 1877, eight years after the railroad and the franchises of the company had passed to purchasers under that sale.

An attempt to evade the Statute of Limitations and the doctrine of laches is made by the following allegations : —

" Your orator further alleges and charges that by the said act of the said trustees he has been unable to follow said property, except without setting aside said sale and title to the said property.  That the president of said company shortly afterwards moved out of the State of Florida and has since died ; that the secretary of the company turned over all the books and papers to some parties to your orator unknown, and that the said secretary, F. H. Flagg, has since died ; that your orator has not been able to find any board of directors of said company since A.D. 1869.

" That your orator is informed and believes that there has been no president or secretary elected by the stockholders or others, and no board of directors, since 1869 ; that he has failed to get any relief, nor can he find any board of directors to whom to apply for relief since 1869."

The act of the trustees here referred to was the sale of the road for the foreclosure of the mortgage.  All the practicable relief which the complainant can obtain by this bill is against the fund arising from the sale in the hands of the trustees of the improvement fund.  This relief could better have been had immediately after the sale than now.  There has been during all this time no obstruction to a suit against them.  The railroad company became of no consequence, had no property and no interest in this litigation after the sale.

It is by no means evident that if they were liable to a suit, that some one could not have been found on whom service could have been made.  There was during all this time the same means of serving process on the company that existed when the present suit was brought.

The marshal in this suit returns a service on D. W. George, one of the directors of the company in Florida, and he was probably a resident director during all that time.  Upon this service the railroad company appeared by counsel and demurred.

We are of opinion that both by reason of the Statute of Limitations and the general doctrine of laches, in failing to tender his certificates in due time and assert a rescission of the contract, the demurrer was well taken.

*Decree affirmed.*