THOMAS, ELWYN, Associate Judge.
The appellant failed in her suit against the appellees to quiet title to' certain lands. The appellees-DuBose prevailed on their counterclaim to quiet their title to the same property.
The appellant was four years old when her parents were divorced and four years afterward the father acquired the property in question. He still owned it at the time he enlisted in the United States Navy in 1943. In 1945 he died.
In 1944 a tax certificate was issued to one J. O. Price who' in 1947 transferred it to the appellee, J. C. Kickliter, brother of appellant’s deceased father. The same year he secured a deed based upon the certificate, *399 then he and his wife conveyed the property to appellee-James I. DuBose.
The appellant represented to the chancellor that she had no knowledge of the existence of the property'or of the transactions involving it until a short time before she instituted her suit in 1957.
At the time Kickliter applied for the tax deed the clerk sent a notice of his application to appellant’s father, in care of the applicant, although the father had died two years before. The appellant charged that her uncle knowing full well that his brother, the owner of the land, was dead, nevertheless did not forward the notice to her, did not return it to the clerk, and did not advise the clerk of the death of the owner or the existence of an heir.
Furthermore, charged the appellant, che uncle actively withheld from her all knowledge of the property which by the law of descent and distribution was hers. The father had died intestate and there had been no administration of his estate.
Under Sec. 194.15 et seq., Florida Statutes 1943, and F.S.A., the holder of the tax certificate, assuming for the moment that all proceedings leading to its issuance were valid, could have applied for a tax deed after the lapse of two years from April 1st, 1944, the year the taxes became delinquent, so in this respect the state law appears to have been followed as the holder made his application in 1947. But the question next arising is the validity of the proceeding when Sec. 194.15, supra, is construed in the light of the provisions of the Soldiers’ and Sailors’ Civil Relief Act, 56 Stat. 769, 770, 50 U.S.C.A.Appendix, § 525. In that law it is provided that “[t]he period of military service shall not be included in computing any period now or hereafter to be limited by any law, regulation, or order for the bringing of any action or proceeding in any court, board, bureau, commission, department, or other agency of government by or against any person in military service or by or against his heirs, executors, administrators, or assigns, whether such cause of action or the right or privilege to institute such action or proceeding shall have accrued prior to or during the period of such service, nor shall any part of such period which occurs after the date of enactment of the Soldiers’ and Sailors’ Civil Relief Act Amendments of 1942 (Oct. 6, 1942) be included in computing any period now or hereafter provided by any law for the redemption of real property sold or forfeited to enforce any obligation, tax, or assessment.”
When the two laws are considered together, it is plain that the clerk, in computing the two-year period after which the tax certificate holder was entitled to apply for a tax deed, could not have included any period between 6 October 1942, the effective date of the Federal Act, and 9 July 1945, the day the owner’s service was terminated by death. Burke v. O’Brien, Fla., 47 So.2d 777. In the present case it is clear that two years elapsed between April first of the year in which the tax became delinquent and the day the tax deed was executed even when the period between the effective date of the act and the termination of the service of the owner is deducted from the lapsed time. But it is equally clear that two full years had not passed if the period is computed to the day of “application” for the tax deed which was 16 June 1947, inasmuch as the owner’s service had ended 9 July 1945. In other words, the application was made 23 days before expiration of the two-year period.
The question in this aspect of the case is whether the filing of the certificate and notice to the clerk that the holder desired the lands advertised or the actual date the deed issued was the terminal point of the two-year period.
We are constrained to hold that inasmuch as the legislature has prescribed the period that must elapse before the holder of a certificate may file it with the clerk and advise the clerk of his wish to obtain a tax deed, an effort to put in motion before the *400 expiration of that period the machinery to convert the certificate into a deed, as was done in this case, is premature. So we hold that the deed lacked validity in that respect.
We have not overlooked the statute which secures to the delinquent taxpayer the right to redeem his land any time before a tax deed is issued, Sec. 194.02(1), Florida Statutes 1957, and F.S.A., and we have specially studied that law in connection with the last clause of the quoted Federal statute relating to the computation of time for redemption of real property sold to enforce a tax. But we have not found language justifying the view that an application for tax deed may he early filed inasmuch as the redemption may be accomplished anytime before issuance of the tax deed.
Sanction of such procedure could result in shortening the redemption period for after the application is made certain steps must be taken preliminary to the issuance of the deed. For example, all outstanding tax certificates must be located and purchased or redeemed and the clerk must publish for four weeks a notice of the application for tax deed. Secs. 194.15 and 194.16, Florida Statutes 1957, and F.S.A.
If these preliminary steps were permitted to be taken so that only the issuance of the deed would have to wait until the expiration of the two-year period, obviously the time for redemption by the owner would be reduced. We choose to apply in this controversy the literal construction of Sec. 194.15, supra.
The manner in which the notice of application was served by mail further undermined the eventual deed. Under Sec. 194.-18, Florida Statutes 1941, and F.S.A., as amended, the clerk of the circuit court in addition to the published notice must mail a copy of that notice to the owner if his name and address appear on the tax roll for the year in which taxes were last extended. If the name and address are not shown there, the notice must be mailed to the person who last paid the taxes as that information appears on the tax collector’s receipt book.
It seems that a deputy clerk of the circuit court ascertained from the tax roll for the year the taxes were last extended that the name and address of the owner of the property in controversy were C. J. Kickliter, “care of C. V. McClurg Lakeland, Florida.”
Turning to the record we find the following:
“This is to certify that I, Chas. H. Pent,
Clerk of the Circuit Court of Hills-borough County, Florida, did on the
12 day of July , 1957, mail a copy
of the notice addressed to
Cevera James Kickliter at 46 Earragut Place
Washington, D. C.
Cevera James Kickliter
c/o J. C. Kickliter at Rt. 1 Lithia Fla.
Taxes paid last by App.
Mtg. Resettlement Administration (tried) at 805 Morgan St.
Tampa 2, Fla.”
As we stated at the outset the appellee-Kickliter received the notice of his own application and pocketed it. As has been seen, there is no mention in the certificate that a notice was sent to the owner in care of C. V. McClurg whose name appeared on the tax roll. The significance of this name will appear later in this decision.
The appellees argue that despite the absence of any reference to a notice having been sent to Cevera Kickliter in care of McClurg we should indulge the presumption that the clerk performed his duty, and having performed it such a notice went forward even though the certificate contained no such statement. We cannot extend the rule so far. As support for the position we are cited the case of Wells v. Thomas, Fla., 78 So.2d 378, 384, in which the Supreme Court held that although the taxpayer said he had received no notice of application for a tax deed to his property and nothing in the clerk’s office showed that the notice had been mailed to him, nevertheless there was “nothing there to show that it was not mailed” and the clerk would be presumed to have performed his duty. We cannot accept the *401 argument that when the clerk certified positively that he mailed the notice to three named persons at specified addresses it will be presumed that he went further and mailed it to everyone else to whom he should have sent it.
The mailing of this notice was jurisdictional, Heinberg v. Andress, Fla., 45 So.2d 488, Wells v. Thomas, Fla., 89 So.2d 259, and it was not mailed. So for a second reason the foundation of the tax deed was undermined.
The conduct of appellee-Kickliter in dealing with the property which the appellant inherited from her father was reprehensible, and his testimony about his connection with the transaction demonstrated such a total lack of concern for his niece and definite callousness about depriving her of her property as to provoke us as they seem to have vexed the chancellor. But no occasion appears further to pursue that subject.
The appellees contend that the appellant should not have prevailed because she was barred by the statute of limitations and by laches. The appellant had four years, under the statute, Sec. 196.06, Florida Statutes 1941, and F.S.A., to bring her suit after the purchaser at the tax sale went into possession. This occupancy began in 1947, they claim, so that the suit would have been barred after the year 1951 but for the minority of appellant which lasted until 1952. By the same law she was allowed to commence her action within three years after the discontinuance of such disability, that is, in 1955, but she did not sue until 1957.
To refute the assertion that the appellant timely sued when she learned of her interest in the property appellees argue that when the appellant, then a minor, called at a Lake-land bank with her mother and an attorney, after her father’s death, and consulted an officer of the bank, Mr. McClurg, “it is suggested” she learned from the banker about the property in dispute yet failed to bring suit, until five years after reaching her majority. Parenthetically, the name of the banker and the place of his business correspond with the information said to have appeared in the tax roll and, to repeat, the notice of application for tax deed had not been sent to the owner in his care.
In 1953 appellant received an anonymous telephone call that she should investigate some property at “Picnic”, evidently the local name for the territory where the land in question was located, yet, say the appel-lees, this did not prompt her to act. All these circumstances, they insist demonstrate laches and sufficient notice of any fraud committed upon her to start the running of the statute of limitations.
We cannot attach to these incidents the importance that appellees claim for them. A mere conjecture that the appellant, at the time a minor, learned enough from the Lakeland banker to put her on notice of the machinations of her uncle, or the receipt of the anonymous telephone message about investigating some property of which she probably knew nothing did not constitute proof that sufficient knowledge of her interest in the property had been transmitted to her to start the time running within which she could assert her rights. McCrory Stores Corporation v. Lee, Comptroller, 157 Fla. 274, 25 So.2d 567; Coddington v. Pensacola & G. R. Co., 103 U.S. 409, 26 L.Ed. 400.
Although the appellees-DuBose may not have been parties to the fraud practiced by appellee-Kickliter they had constructive knowledge not only of the prematurity of the application for the tax deed but also of the fact that the person from whom they were purchasing, Kickliter, had received the notice of his own application for the tax deed. And they had constructive knowledge, too, of the inconsistency between the entry on the tax roll and the clerk’s certificate of mailing.
Reversed.
ALLEN, Acting Chief Judge, and SHANNON, J., concur.