**PHILCO CORPORATION, Lansdale Tube Company, Plaintiffs,**

**v.**

**RADIO CORPORATION OF AMERICA,** General Electric Company, American Telephone and Telegraph Company, Western Electric Company, Inc., Bell Telephone Laboratories, Inc., Defendants.

Civ. A. No. 21923.

United States District Court
E. D. Pennsylvania.
June 21, 1960.

Hamilton C. Connor, Jr., William S. Rawls, Charles I. Thompson, Jr., Roy N. Freed, Edward G. Bauer, Jr., Philip Dechert, Philadelphia, Pa., R. Morton Adams, New York City, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., Pennie, Edmonds, Morton, Barrows & Taylor, New York City, of counsel, for plaintiffs.

Bernard G. Segal, Philadelphia, Pa., for R. C. A.; Charles J. Biddle, Philadelphia, Pa., for G. E.; Arthur Littleton, Ernest R. vonStarck, Philadelphia, Pa., for A. T. & T., Western Electric Co., Bell Telephone Laboratories, Inc., Schnader, Harrison, Segal & Lewis, Drinker, Biddle & Reath, Morgan, Lewis & Bockius, Philadelphia, Pa., of counsel, for defendants.

CLARY, District Judge.

This is a civil action for violation of the antitrust laws, Title 15 U.S.C.A. §§ 1, 2 and 3, and for a declaratory judgment concerning the alleged misuse, abuse and unenforceability of certain of the defendants' patent rights, Title 28 U.S.C.A. § 2201 et seq. Both of the plaintiffs are Pennsylvania corporations: Philco Corporation (hereinafter referred to as "Philco") being engaged for many years in the development, manufacture and sale of electronic communications apparatus, (i. e., radio, television and radar); and Lansdale Tube Company (hereinafter referred to as "Lansdale"), its subsidiary, the supplier of tubes and transistors to Philco.

The defendants are engaged in various fields of electronics:[1] Radio Corporation of America (hereinafter referred to as "R. C. A."), like Philco, is primarily involved in the electronic communications industry; General Electric Company (hereinafter referred to as "G. E.") is primarily involved in the electrical apparatus industry i. e., incandescent

---

1. When used in this opinion, the phrase "field of electronics" includes the electronic communications industry (i. e., radio, television and radar); the public communications industry (i. e., telephone and telegraph); and the electrical apparatus industry (i. e., incandescent electric lamps, electric motors and generators).

lamps, electric motors and generators), although they also produce electronic communications apparatus in competition with the plaintiffs; American Telephone and Telegraph Company (hereinafter referred to as "A. T. & T.") is in virtual control of the public communications industry (i. e., telephone and telegraph); Western Electric Company, Inc. (hereinafter referred to as "Western Electric") manufactures practically all of the public communications apparatus used by A. T. & T. and in addition produces electronic communications apparatus; Bell Telephone Laboratories, Inc. (hereinafter referred to as "Bell Labs.") conducts extensive research in the various fields of electronics; and Westinghouse Electric Company (named as coconspirator but not as a defendant) is primarily involved in the electrical apparatus industry, although it also produces electronic communications apparatus in competition with the plaintiffs. All of the defendants along with Westinghouse Electric Company hold numerous patents in the various fields of electronics.

The complaint, consisting of some 60 pages with 138 numbered paragraphs, was filed on January 14, 1957. Briefly stated, it alleges a mass conspiracy among the defendants, beginning in 1919 and continuing to date, to restrain trade and eliminate competition in the field of electronic communications and to further divide up and monopolize various other fields of electronics among themselves. The basic means alleged to have been used by the defendants to effect this conspiracy was the improper use and manipulation of the extensive patents and patent rights held by each of them. In their prayer for relief the plaintiffs seek $150,000,000 damages ($50,000,000 trebled) plus certain injunctive relief concerning the defendants' vast patent rights. The defendants on their part deny any conspiracy to monopolize, or monopolization, and, in addition, assert various defenses to the complaint.

Before the Court at this time is a motion by the defendants for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure, Title 28 U.S.C.A. The defendants contend that the applicable statute of limitations requires us to summarily dismiss the suit as to all of the defendants to the extent of any cause of action which accrued against them *prior* to January 15, 1953.[2] The plaintiffs take issue with this cutoff date, except as to defendant Bell Labs, whom they apparently agree has the protection of the four year federal statute of limitations, Title 15 U.S.C.A. § 15b. (See transcript of oral argument, page 111.) Since the contentions of the parties as to each of the remaining defendants differ, we will treat them separately. Following this we will discuss the problem of a single versus a multiple judgment in this action.

### A. T. & T. and Western Electric

These defendants may be treated together because both the plaintiffs' and the defendants' contentions are the same as to each. The point on which the parties sharply disagree is whether an earlier Government antitrust suit against A. T. & T. and Western Electric, which commenced on January 14, 1949, and ended on January 24, 1956, *tolls* the statute of limitations in the present action, by virtue of Section 16(b), Title 15 U.S.C.A. The defendants argue that it does not, for the reason that the present action is not "based in whole or in part on any matter complained of in [the Government suit]", as those words are used in the statute. As a result they conclude that January 15, 1953 is the proper cutoff date for A. T. & T. and Western Electric (i. e., four years prior to filing of the complaint, 15 U.S.C.A. § 15b). The plaintiffs disagree and as a result conclude that counting back from the date

2. The original motion set the cutoff date at January 7, 1955, but in light of the recent opinion of the Third Circuit in Shapiro v. Paramount Film Distributing Corp., 1960, 274 F.2d 743, the defendants have changed their contention as to the proper cutoff date.

the earlier Government suit began, they have the benefit of the six year Pennsylvania statute of limitations, 12 P.S. § 31, which would ordinarily take them back to January 14, 1943, but that this period is further suspended by the Wartime Suspension Act of October 10, 1942, c. 589, 56 Stat. 781, amended June 30, 1945, c. 213, 59 Stat. 306, 15 U.S.C.A. § 16 note, so as to take them back to May 2, 1939.[3] Although the defendants did not meet this contention by arguing in the alternative, the plaintiffs' contention, assuming that the Government suit did *toll* the statute during its pendency, would appear to be basically correct.

After carefully considering this question and the extensive argument made by each side in this extremely complicated antitrust case, we are convinced that the correct answer as to the *tolling* effect of the earlier Government suit lies somewhere between the two extreme positions taken by the parties. The defendants' error on this issue results in large part from their apparent failure to appreciate the burden placed upon them when presenting a motion of this nature *for a partial summary judgment* based upon the statute of limitations. It is incumbent upon such a moving party to show that, taking all of the allegations of the complaint as true (unless, of course, they are clearly controverted by supplemental documents), the plaintiffs are not entitled to recovery *upon any claim for relief contained in the complaint*. Smart v. United States, D.C.Okl.1953, 111 F.Supp. 907, affirmed at 10 Cir., 1953, 207 F.2d 841. See also Nagler v. Admiral Corp., 2 Cir., 1957, 248 F.2d 319, and authority cited therein.

The defendants have convinced us that were we, at this stage of the proceeding, compelled to view the complaint as stating only a single cause of action—based upon the mass conspiracy among all of the defendants, to divide up and monopolize the various areas of trade within the electronics field—we would have to reject the plaintiffs' claim that the earlier Government suit against A. T. & T. and Western Electric *tolled* the statute of limitations as to that single cause of action. Such a claim is clearly not "virtually identical" with the earlier Government claim. See for instance, Steiner v. 20th Century-Fox Film Corp., 9 Cir., 1956, 232 F.2d 190. However, we must reject such a conclusion, since we find that the plaintiffs *have* stated enough facts upon which to base a *separate* claim for relief against A. T. & T. and Western Electric alone, for a separate conspiracy in violation of the Sherman Act, 15 U.S.C.A. §§ 1–7, 15 note.

Thus, after plaintiffs set out the jurisdictional grounds, identify the parties and indicate the various fields of commerce involved, the complaint alleges, among other things, that (1) A. T. & T. and Western Electric violated Sections 1, 2 and 3 of the Sherman Act (complaint, pars. 22, 23); (2) A. T. & T. required, with only minor exceptions, that all of their operating units purchase all of their apparatus from Western Electric (complaint, par. 55); (3) A. T. & T. and Western Electric refused until recently to grant licenses to others to manufacture, use and sell public communications apparatus under their patents relating to such apparatus (complaint, par. 56); (4) A. T. & T. and Western Electric conspired with the various defendants to maintain a monopoly in the public communications industry, particularly through the manipulation of their patent rights (complaint, pars. 52, 57); (5) as a result of these and other wrongful acts, A. T. & T. and Western Electric enjoy a monopoly in the public communications industry (complaint, par. 88a); and the public (complaint, pars. 88b, c and e), as well as Philco (complaint, par. 121m) have been injured thereby.

Taken together these allegations state a separate claim for relief against A. T. & T. and Western Electric. It is true

---

3. Apparently this should be April 24, 1939. However, since the plaintiffs claim that they have suffered no substantial injury prior to 1946 and are only interested in damages from that date, the point is academic.

**160**

that this separate claim is alleged as a part of and even necessary to the larger conspiracy. However, we see nothing novel in stating a conspiracy within a conspiracy, each constituting a separate claim for relief. Undoubtedly in such a situation the plaintiff cannot have full recovery upon both, since this would constitute more than one satisfaction. Where, however, for reasons of the statute of limitations, recovery on the larger conspiracy is barred, we see no reason to summarily bar recovery upon the lesser conspiracy—even though it was not clearly set out as a separate and distinct claim in an independent count of the complaint.

■ We, therefore, view the complaint as stating a separate and distinct cause of action against A. T. & T. and Western Electric for restraining trade in and monopolizing the public communications industry by means which included cross-patent licensing agreements with R. C. A., G. E. and Westinghouse, and an agreement betwen A. T. & T. and Western Electric whereby the latter would supply all of the telephone equipment needed by A. T. & T.

It is undoubtedly true that such a claim for relief is not clearly set apart from the claim based upon the mass conspiracy involving all of the defendants. It might be argued that Philco has no more spelled out such a separate claim than a party who writes the word Complaint has spelled out Plaint or Complain. However, figuratively (if not literally) speaking, such poor spelling out on the plaintiffs' part will not alone sustain a motion for summary judgment. There are less drastic remedies for such shortcomings. See for instance, Rules 12(e), (f) and 21 of the Federal Rules of Civil Procedure, Title 28 U.S.C.A. The courts have been extremely reluctant to deny a plaintiff his day in court simply because his complaint is poorly drawn. Robinson v. Lull, D.C.Ill.1956, 145 F.Supp. 134.

■ Recognizing the above allegations as stating a separate claim for relief against A. T. & T. and Western Electric, there can be little doubt that the Government suit in question did in fact toll the statute as to such a separate claim. It is virtually identical with the matter complained of in the Government suit. The defendants' failure to reach this conclusion results from their insistence upon comparing the *whole* complaint here with the Government complaint in the A. T. & T. case—on the theory that this complaint contains but one cause of action.[4] In light of the law concerning the courts' liberal interpretation of a complaint when presented with a motion for summary judgment thereon, we must reject such a narrow approach.[5]

■ Nevertheless, this is not to say, as the plaintiffs seems to intimate, that as to the alleged mass conspiracy participated in by all of the defendants, or as to any other claim for relief against these two defendants, the statute is tolled. Only that claim for relief against A. T. & T. and Western Electric which is based upon their alleged conspiracy to monopolize, and monopolization, of the public communications industry is tolled, since this claim alone was the object of the earlier Government suit. As to any other claim against these two defendants based upon the antitrust laws, the four year federal statute applies and recovery against them *prior* to January 15, 1953, is now barred.

4. In keeping with this comparison of the *whole complaint*, the defendants state at page 20 of A. T. & T.'s separate brief, "A conspiracy among six parties beginning in 1919 to divide up the entire field of electronics differs considerably from a conspiracy beginning about 1900 between only two of such conspirators to monopolize telephony." We are in complete agreement with this statement but

we think it misconceives the real issue before us.

5. Nagler v. Admiral Corp., 2 Cir., 1957, 248 F.2d 319. For another case in which only *one* cause of action contained in a complaint was held to be *tolled* by an earlier government suit, see United Banana Co. v. United Fruit Co., D.C.D. Conn.1959, 172 F.Supp. 580, a case which was cited in the defendants' brief.

General Electric Company.

G. E. takes the position that the Government suit against it, which commenced on January 27, 1941, and ended on October 8, 1953, has no effect upon the applicable statute of limitations in this case. If this is true, G. E.'s cutoff date is also January 15, 1953. Although Philco's counsel appeared to concede the fact that they had no benefit of tolling as to G. E. at the pre-trial conference (transcript p. 23), they now argue that they can recover against G. E. from January 27, 1941, because they filed suit within four years after the termination of the Government suit. Two circuits have already rejected this contention as to the operation of the new federal limitation statute, and their reasoning appears unassailable. Herman Schwabe, Inc. v. United Shoe Machinery Corp., 2 Cir., 1960, 274 F.2d 608; United Shoe Machinery Corp. v. International Shoe Machine Corp., 1 Cir., 1960, 275 F.2d 459.[6] We are in complete agreement with the reasoning as well as the conclusion reached in these cases and accordingly find that the proper cutoff date as to G. E. is January 15, 1953.

Radio Corporation of America.

R. C. A. takes the position that the federal statute of limitations bars recovery against it for any cause of action accruing prior to November 20, 1950, four years prior to the commencement of a Government suit against them on November 19, 1954. They concede that that suit *tolled* the statute in this case. The plaintiffs, while agreeing that the statute was *tolled*, argue that the proper cutoff date is November 20, 1948 (i. e., *six years* prior to the commencement of the Government suit). They base this conclusion upon the alleged applicability of a Pennsylvania limitation statute, rather than the four year federal limitation statute.

The disagreement results from an interpretation of § 15b and § 16(b) of Title 15, U.S.C.A. This very issue has already been before three district courts for decision. Two of them have *held* that where a government suit was in progress at the time the new federal four year statute was enacted (15 U.S.C.A. § 15b) and the plaintiff filed his complaint within the period of suspension under Title 15 U.S.C.A. § 16(b), but *not* within the six months' grace period provided by § 15b of that same Title, the plaintiff would have the benefit of that state statute of limitations which was applicable prior to the enactment of the new federal limitation statute, and not the four year federal statute. Goodfriend v. Kansas City Star Co., D.C.W.D.Mo.1958, 158 F.Supp. 531; April v. National Cranberry Ass'n, D.C.D.Mass.1958, 168 F. Supp. 919. The third case held otherwise. United Banana Co. v. United Fruit Co., D.C.D.Conn.1959, 172 F.Supp. 580.

We are not persuaded by numbers but we are by solid reasoning. Judge Duncan's well-developed reasoning in the Goodfriend case, supra, is persuasive. It is further supported by the April opinion, supra. On the other hand, the United Banana Co. case, supra, was brief in its treatment of this issue which was only a small part of the motion then before the court. Furthermore, the Court in that opinion made no attempt to distinguish either of the earlier cases and, in fact, cited the Goodfriend case for authority on another point. On the strength of these opinions to which we could add little, the plaintiffs' position will be sustained and the proper cutoff date as to R. C. A. is accordingly found to be November 20, 1948.

Duress.

The plaintiffs further seek to avoid the effect of the statute of limitations as to *all* of its claims against the defendants by pleading duress. They take the position that it was R. C. A. who exercised the duress, although they claim the benefit of this duress as to all

---

6. The Supreme Court recently denied certiorari in the Herman Schwabe, Inc. case, 80 S.Ct. 1247.

of the defendants, since they are all alleged to have cooperated with R. C. A. and intentionally put them in such a position of power as to enable them to coerce Philco (plaintiffs' counter-reply brief page 12). We are convinced that this defense must fail as a matter of law.

The plaintiffs have not cited a single antitrust case in which duress was successfully pleaded or in fact clearly recognized as a defense to the running of the statute of limitations. Although duress might, under unusual circumstances, toll the statute of limitations, it is evident that the plaintiffs have not alleged facts which, even if believed, would toll the statute of limitations here. See Lim. of Actions—Duress, 121 A.L.R. 1294.

█ Thus we take it to be the law that the mere fact that the plaintiffs *anticipated* duress does not establish it as a legal defense. Yet nowhere in their complaint, or in the number of documents which they have submitted, did Philco allege a single act or threat on the part of R. C. A. which could be construed as coercion.[7] Surely mere relative strength and weakness does not *per se* constitute duress. Yet Philco's complaint and whole argument on this point seems to boil down to the proposition that R. C. A. was big and strong and that a suit against it *might* result in serious financial loss to Philco. Surely no litigant can expect a party whom they sued to reward them.

█ Moreover duress, in order to toll the statute, must be the result of a threat to do an *unlawful* act. Miller Motors, Inc., v. Ford Motor Co., D.C.M.D.N.C. 1957, 149 F.Supp. 790, affirmed 4 Cir., 1958, 252 F.2d 441. An examination of the "prohibitive risks which Philco would have run if it dared to battle R. C. A. and the pool" (plaintiffs' brief page 37), and which it relies upon to establish duress, make it evident that none of them

constitute the type of unlawful act which will support a claim of duress.[8]

Although many "possibilities" which Philco now alleges they then believed could have resulted had they brought suit against R. C. A. in 1946 may have placed some pressure upon them to refrain from suing, this in itself does not constitute legal duress which is necessary for *tolling* the statute. Indeed, it could not, particularly in this area of antitrust law where the possibility of financial loss through economic and competitive retaliation faces almost any litigant who is unsuccessful in a private antitrust action—and indeed often faces even those who are successful. To recognize such anticipated loss as sufficient to toll the statute of limitations, would in effect nullify the intent of Congress to place limitations upon suits of this type. It is, therefore, not surprising that we have been unable to discover a single case which has recognized such a defense in this area of the law.

Finally, Philco itself makes it clear that it did not act under duress—that is, under compulsion sufficient to rule out free will—but instead *chose* to go along with R. C. A.'s demands as a matter of simple business judgment. Thus, the notes of L. E. Gubb (Chairman of the Board of Philco), appearing at pages A-2, 3 of the defendants' counter-affidavit, state that (1) Philco was advised by Mr. Steinruck (Secretary and head of the Legal and Patent Department of Philco) to exercise the option to renew the R. C. A. patent license and then file a monopoly suit; (2) Philco now states that they felt that if they did sue they might lose the chance at a million dollars in royalties, in favor of a monopoly fight and the possibilities of elimination of all royalty payments; and (3) that if they sued, Zenith, Crosby and Emerson would join with them in the suit. In another memorandum, Gubb states: "Dave

---

7. At oral argument, Philco's counsel admitted that there were no threats made by any of the defendants. (See page 102, oral argument).

8. Such alleged "prohibitive risks" are the closest thing to a "threat" alleged by the plaintiffs. They appear at pages 37–39 of Philco's brief.

(Dave Smith, Vice President in charge of engineering at Philco) is not too enthusiastic about our going into a monopoly suit. He feels that while we have Judge Morris and Thompson's opinion that we have an excellent case, we are liable not to succeed somewhere along the line and lose the opportunity for an adjustment. On the other hand, if we succeed in breaking up the monopoly, all others would benefit along with ourselves." This detailed analysis and appraisal of the situation in 1946 (shown by these and other statements of Philco's personnel) makes it abundantly clear that Philco *chose* to use the threat of suit to bargain rather than to exercise it. They admittedly benefited by this tactic in recovering greater royalties on their patents. Now they would have their cake and eat it too—and reap the benefit of tolling for duress. This they cannot do.[9]

### Concealment.

In a further valiant effort to avoid the consequence of the statute of limitations, the plaintiffs plead the defense of *concealment* as tolling that statute. However, unlike their position on the defense of duress (which they claim *tolls* the statute on *all* of their claims for relief), they argue that R. C. A. concealed only one of their causes of action, i. e., that based upon the alleged 1946 conspiracy between R. C. A., G. E. and A. T. & T., whereby the latter two defendants agreed to refrain from signing separate cross-patent licenses with Philco until after Philco had renewed its cross-patent license with R. C. A. (See plaintiffs' reply brief, page 3).[10]

The "1946 conspiracy" centers around an alleged meeting in early May of that year between David Sarnoff (President of R. C. A.), Mr. Reed (President of G. E.) and Mr. Luebbe (Vice President of G. E.). At that meeting, which was allegedly called by Mr. Sarnoff, he is alleged to have told the G. E. officials that if they went through with their current negotiations for a cross-patent license with Philco *before* Philco renewed its patent licensing agreement with R. C. A., they would be unfair to R. C. A. and would thereby undercut its licensing situation. It is alleged that as a result of this conversation G. E. (as well as A. T. & T.) thereafter cut off negotiations with Philco until after the latter had renewed its R. C. A. patent license.

Assuming that such acts did occur and further that they constitute a violation of the antitrust laws for which Philco could recover damages, what further allegations in Philco's complaint, if believed, would justify a finding of concealment of such a cause of action by the defendants or any one of them?

First Philco says " * * * the only persons having knowledge of the facts were the conspirators themselves * * *" (Paragraph 100 of complaint). Stated affirmatively—Philco was without knowledge of the cause of action. Next they say "[Philco] charged R. C. A. with such action [but they] vigorously denied it." (Paragraph 100 of complaint). Stated another way—R. C. A. committed an affirmative act of concealment of this cause of action. Finally, they allege that "since the only persons

9. It should also be added that this duress argument has even less merit as to the other defendants, whose only alleged connection with R.C.A.'s duress is that they cooperated with the latter, thus enabling R.C.A. to in fact coerce Philco. This appears to be a novel but unwarranted extension of the doctrine of duress which has always been narrowly construed. No case has ever extended this extremely limited defense to mere passive coconspirators.

10. We are still in doubt as to whether Philco asserts this claim of concealment against R.C.A. alone or whether it also claims the benefit of tolling as to A. T. & T. and G.E. as well. There are additional reasons why the argument must fail as to G.E. and A. T. & T. Neither of these defendants are alleged to have committed any affirmative act of concealment. See Overfield v. Pennroad Corp., 3 Cir., 1944, 146 F.2d 889. Indeed, it is admitted by Philco that G.E.'s Vice President told several of Philco's agents of the Sarnoff meeting. To thereafter hold them guilty of concealment would be illogical.

having knowledge of the facts were the conspirators themselves, it was apparent to Philco that further investigation would be fruitless." (Paragraph 100 of complaint). Restated—no amount of diligence on Philco's part would have uncovered this cause of action. These allegations taken together constitute the essential elements of the defense of concealment. Had the defendants, without more, presented their present motion for summary judgment, their request would necessarily have been denied, since the pleadings alone raise a genuine issue as to a material fact, (whether or not there was concealment of the cause of action by R. C. A. so as to toll the statute of limitations). See Rule 56(c) of the Federal Rules of Civil Procedure, Title 28 U.S.C.A.

 However, the record does not end there. Both sides submitted certain supplementary material in the nature of depositions and affidavits as well as admissions on the record. Did any of these negate the existence of the genuine issue of concealment raised by the pleadings? We think they did.

This supplementary material clearly established the following facts, which are taken from Philco's own brief and are thus admitted:

"On May 24, 1946, F. D. Williams, Assistant to the President of Philco, reported a conversation the preceding day with Dr. W. R. G. Baker of G. E. (Dr. Baker was at that time Vice President of G. E.). Dr. Baker had told Williams that two representatives of G. E. had met with David Sarnoff of R. C. A.; that Sarnoff had said execution of the cross-license between G. E. and Philco would upset the licensing picture; and that G. E. had agreed not to execute the license until after Philco renewed its R. C. A. package set license on June 30, 1946."

Philco, through its top officials, was thus informed of the very facts which it *then* recognized as constituting a "tortious interference in Philco's contract negotiations and *a violation of the antitrust laws*" (emphasis added), (page 31 of plaintiffs' brief), and which they *now* allege as the very claim for relief which was concealed from them. We emphasize the point that they were not given facts which might create suspicion or indicate the possibility of a claim for relief based upon the antitrust laws. Rather they were given the essential facts now constituting their claim for relief (minus only the fact of injury to the public and to themselves). *And they recognized them as constituting a cause of action at that time.* The knowledge of such facts constituted knowledge of the cause of action now claimed to have been concealed.[11] Such knowledge negates the existence of an element essential to the defense of concealment. Coddington v. Railroad Co., 1880, 103 U.S. 409, 26 L. Ed. 400; Phillips Petroleum Co. v. Johnson, 5 Cir., 1946, 155 F.2d 185, certiorari denied 329 U.S. 730, 67 S.Ct. 87, 91 L. Ed. 632; Carr-Consolidated Biscuit Co. v. Moore, D.C.M.D.Pa.1954, 125 F.Supp. 423; Turtzo v. Boyer, 1952, 370 Pa. 526, 88 A.2d 884; Ebbert v. Plymouth Oil Co., 1943, 348 Pa. 129, 34 A.2d 493; Ferris v. Henderson, 1849, 12 Pa. 49; 22 P.L.E. Limitation of Actions § 88; Annotation, Limitations—Effect of Concealment, 173 A.L.R. 576 at 589.

Were we presented with nothing more than the complaint plus a stipulation to the above facts, we would have no hesitancy in granting a summary judgment in favor of the defendants on the issue of concealment. Perhaps there are those who would take a more philosophic approach to that principle of law which states that where there is knowledge of the existence of a cause of action, there can be no tolling of the statute of limitations for concealment—and inquire, "What is knowledge?", or "Must we believe a fact before we have knowledge of it?", or "Can we believe a fact and not

---

11. Knowledge by corporate officials constitutes knowledge on the part of the corporation. Carr-Consolidated Biscuit Co. v. Moore, D.C.M.D.Pa.1954, 125 F. Supp. 423, at page 432.

have knowledge of it?", or "Can we know a fact and not believe it?" District Court Judges being perhaps the least well equipped in our Federal system of justice to philosophize (with the possible exception of a jury, to whom this issue must otherwise be presented), we accept this statement of law at face value and leave any philosophizing to our Appellate Courts.

We are nevertheless troubled on this issue by reason of a very recent opinion in this Circuit. Bragen v. Hudson County News Company, Inc., 3 Cir., 1960, 278 F.2d 615. See also Lawlor v. National Screen Service Corp., 3 Cir., 1956, 238 F.2d 59. The Bragen case reaffirms the Third Circuit's view of the extremely limited circumstances in which summary judgment may appropriately be entered. The right to summary judgment however does exist and we would be equally in error were we to deny such relief where it is justified, as were we to grant it where it is not—although error in the former direction would less often be called to our attention.

In the Bragen case, supra, [278 F.2d 618] the Court found that the District Court erred in that "it 'decided' factual issues which went to the heart of the litigation." The Circuit Court went on to say:

"The impact of particular circumstances upon an inference arising from an admittedly existing factual situation calls for a factual determination which is the function of the trier of facts and not that of the court in disposing of a motion for summary judgment. See Gray Tool Co. v. Humble Oil Refining Co., 5 Cir., 1951, 186 F.2d 365, 367, cert[iorari] denied, 341 U.S. 934, [71 S.Ct. 854, 95 L.Ed. 1363], where it was held that 'A judge may not, on motion for summary judgment, draw fact inferences * * * such inferences may be drawn only on a trial'."

12. These reasons, as well as the remainder of Philco's concealment argument, are

"As we earlier stated, 'Documents filed in support of a motion for summary judgment are to be used for determining whether issues of fact exist and *not* to decide the fact issues themselves.'"

We have already taken the position that, were we presented with nothing more than the complaint plus a stipulation as to the facts previously discussed, we would not hesitate to grant a summary judgment in defendants' favor on the issue of concealment. Rule 56(c), Federal Rules of Civil Procedure. The Bragen case, as we understand it, does not call for a contrary result. This is because in the instant case the conclusion that Philco had "knowledge" of the cause of action is *not* a "factual determination" or a "fact inference" as we understand those concepts. Rather it is a fact which needs no "determination" and is not reached by any "inference" as those words are used in the Bragen case—any more than the conclusion that parties lack diversity in a particular case is a "fact determination" or "fact inference" from the expressly pleaded residence of the parties as within the same state. In other words, such facts require no further mental process which could possibly be relegated to a jury. The question remains, however, is there anything further in the pleadings, depositions, admissions or affidavits which alter this conclusion, so as to reraise a genuine issue as to the material fact of concealment? We think not.

Philco would reply upon the alleged fact that it did not believe Dr. Baker, and in support of their alleged belief that the Vice President of G. E. was a liar, they advance several interesting reasons.[12] They further contend that R. C. A. committed several affirmative acts so as to dispel what "suspicion" Philco did have as to the existence of such a cause of action. Nevertheless such alleged facts, even if believed, do not interpose themselves between the simple facts

so absurd as to hardly merit further discussion.

which clearly establish Philco's knowledge of their cause of action and the Court's *conclusion* that they had knowledge, so as to raise a fact issue within the province of a jury. Perhaps there could arise an extreme case in which the fact that one party relates facts to another party does not establish the fact of knowledge by the recipient thereof or by his principal. However, the facts alleged here are not enough to bring such an issue to the jury. Even assuming arguendo that reasonable men might find that Philco disbelieved Baker, our conclusion would not be changed. This is because the issue is *not* whether or not Philco in fact believed Baker, but whether or not Baker's statement to Philco's officers gave them "knowledge" of their cause of action. We think it did, at least as far as we are able to comprehend the meaning of that word. We further think that to put such an "issue" to a jury would be a clear violation of Rule 56(c) of the Federal Rules of Civil Procedure, Title 28 U.S.C.A.

### Single Judgment Rule.

A less difficult problem is presented by defendants' contention that the Court *must* enter a single judgment against all of the defendants, the judgment to run for the shortest period of limitation applicable to any one of them. Such an argument has already been rejected by Judge Van Dusen in the case of Shapiro v. Paramount Film Distributing Corp., D.C.1960, 177 F.Supp. 88. We are in complete agreement with Judge Van Dusen on this point and, indeed, see little merit in defendants' contention.[13] As a practical matter, the defendants concede that to apply a single judgment rule here would simply force the plaintiffs to institute a separate suit against those parties with longer periods of limitation for that period which would neither be barred by the statute nor covered by a single judgment here.

This conclusion, however, does not answer the question of whether the Court is *compelled* to allow the plaintiffs to proceed to adjudicate all of their claims for relief in a single trial—or whether, in the exercise of its discretion, it should grant separate trials on the plaintiffs' claims against R. C. A. alone for the period between November 20, 1948 and January 15, 1953. Judge Van Dusen left this question open in the Shapiro case, supra, indicating that were the case to be tried to a jury, the entry of more than a single judgment might be looked upon with less favor and indeed not allowed. We are not here concerned with common law concepts of tort actions. An antitrust action is a creation of statute, unknown at common law, and to apply common law principles indiscriminately to actions of this magnitude could conceivably lead to grotesque results.

Since in the present posture of the case the Court cannot determine whether Philco will in fact be able to prove any damages for the longer period of limitations as to R. C. A., this question will be left for decision after completion of discovery and the final pre-trial order for trial.

### Summary.

To summarize what has been said above, we hold that with two exceptions hereinafter set out any claim which the plaintiffs have asserted against any of the defendants (separately or jointly) for violation of the antitrust laws are barred by the applicable statute of limitations *prior* to January 15, 1953.

The exceptions mentioned above are (1) Philco's claim against A. T. & T. and Western Electric jointly for their alleged conspiracy to restrain trade in and monopolize the public communications industry—the cutoff date on such a claim being fixed at April 24, 1939; (2) Philco's claim against R. C. A. which claim is

---

13. See R.C.A. v. Rauland Corp., (1956 Trade Cas.) ¶ 68, 475 (N.D.Ill.1956), and Charles Rubenstein, Inc. v. Columbia Pictures Corp., D.C.D.Minn.1959, 176 F. Supp. 527. But see Essaness Theatres, Inc. v. Balaban and Katz, (1955 Trade Cas.) ¶ 68, 152 (N.D.Ill.1955) ; Claughton v. Paramount Pictures Corp., Civ. No. 4068–M (S.D.Fla.1954).

tolled by virtue of a Government suit against R. C. A. back to November 20, 1948. Accordingly, by formal order a partial summary judgment will be entered against the plaintiffs as above outlined.

In considering the mechanics of trial, because of the two exceptions set forth above, the Court may, pursuant to Rule 42(b) of the Federal Rules of Civil Procedure, Title 28 U.S.C.A., order a separate trial on the claim against A. T. & T. and Western Electric, as well as that portion of the claim against R. C. A. which falls within the period between November 20, 1948 and January 15, 1953. However, it is the present thought and intention of the Court to defer decision on these questions pending completion of discovery and further pre-trial conferences.