W. A. BOLLINGER v. W. P. RADER et al.

(Filed 1 December, 1909.)

1. Insane Persons—Hospitals—Directors and Superintendent—Discharge—Negligence—Interpretation of Statutes.

The directors and superintendent of a hospital for the insane acting under the provisions of Revisal, 4596, in discharging or releasing a patient therefrom, cannot be held responsible in damages by the subsequent killing by such patient of another under a charge of negligence. Revisal, 4560.

2. Same—Proximate Cause.

The act of an insane person in killing another about six months after his discharge or release by three directors and the superintendent of a hospital for the insane under authority conferred by Revisal, 4596, was a mere condition arising from the discharge or release, which the directors and superintendent by the exercise of ordinary care and caution, could not have anticipated, foreseen or expected, and for which they could not be held responsible in damages as arising from negligence on their part.

APPEAL from *Justice, J.,* May Term, 1909, of CATAWBA.

The complaint alleges that the defendants—one of whom is the superintendent and the other three directors of the State Hospital for the Insane, located at Morganton, North Carolina—negligently discharged one Lonnie Rader, an insane patient committed to said hospital, from confinement therein, and

that six months later the said Rader, while insane, killed the plaintiff's intestate.

The defendants demurred, because the complaint does not state facts sufficient to constitute a cause of action against these defendants, or either of them, individually or collectively:

1. Because it appears from said complaint that defendant John McCampbell is superintendent of the State Hospital for the Insane, at Morganton, N. C., and the defendants Shuford, Davis and Armfield are members of the board of directors thereof; that said defendants, by virtue of their said offices, and acting within the scope and limits of authority conferred by law, discharged or released Lonnie W. Rader, a patient, from said hospital; that the said McCampbell and his co-defendants are, by section 4560 of the Revisal of 1905, exempted from all personal liability for the alleged acts and omissions complained of in plaintiff's complaint.

2. That said John McCampbell and his co-defendants, as appears from said complaint, were acting in their official capacity in the discharge of duty imposed by law and in the exercise of a legal discretion vested in them, and are not liable to plaintiff for discharging said Lonnie W. Rader, of which the plaintiff complains.

3. That said John McCampbell and his co-defendants, in doing the acts complained of in the plaintiff's complaint, were in the discharge of judicial duties and functions imposed by law, and were acting within the limits of their authority, and are therefore not liable to the plaintiff in this action on account thereof.

4. That the allegations in said complaint, that said defendants, knowing that said Rader was dangerously insane and, notwithstanding said knowledge, negligently caused the said Rader to be discharged from said hospital, do not state facts sufficient to constitute a cause of action against said defendants or either of them.

5. That there are not facts or alleged facts set forth in the complaint of plaintiff which could legally cause the damages claimed by him.

His Honor sustained the demurrer, and the plaintiff appealed.

*Witherspoon & Witherspoon, A. A. Whitener* and *L. C. Caldwell* for plaintiff.
*W. D. Turner, W. A. Self* and *S. J. Ervin* for defendants.

CLARK, C. J., after stating the facts: The defendants were public officers and were acting as such at the time that the said

Lonnie Rader was discharged by them from further confinement in the said State Hospital. The statute (Revisal, sec. 4596) provides: "Any three of the board of directors of any hospital . . . shall be a board to discharge or remove from their hospital any person admitted as insane, when such person has become or is found to be of sane mind, or when such person is incurable and, in the opinion of the superintendent, his being at large will not be injurious to himself or dangerous to the community; or said board may permit such person to go to the county of his settlement, on probation, when, in the opinion of the said superintendent, it will not be injurious to himself or dangerous to the community, and said board may discharge or remove such person upon other sufficient cause appearing to them."

The defendants discharged Lonnie Rader under and pursuant to the said statute, and this discharge of Lonnie Rader is complained of as a negligent act on their part.

We need not discuss the other grounds of demurrer, which were ably and interestingly argued before us by counsel for both sides, for the first ground of the demurrer is conclusive. The statute under which the hospital was created, organized and now exists provides that "No director or superintendent of any State hospital shall be personally liable for any act or thing done under or in pursuance of any of the provisions of this chapter." Revisal, sec. 4560. The discharge was made under and by virtue of the authority conferred by the above section (4596) of the Revisal.

But we will add that it does not seem to us that the discharge of Rader, on 5 March, even if negligently made, was the proximate cause of the death of the young girl, which occurred 13 September following. The allegation is in the nature of *"Post hoc, ergo propter hoc."*

The defendants could not, by the exercise of ordinary care and caution, have anticipated, foreseen or expected that the death of the plaintiff's intestate would follow as the natural result of their act in discharging Rader from the hospital.

Their erroneous or mistaken opinion or judgment—that Lonnie Rader was sane, or insane—that his being at large would not be injurious to him or dangerous to the community, or that there were other sufficient reasons why he should be discharged—and their act in discharging him, did not cause her death. It may be that if they had kept Rader confined in the State Hospital he might not have killed her; but it is equally true that if

he had never been born or had never become insane he would not have killed her. The discharge of Rader, his absence from the hospital, his presence in Catawba County, and his presence at church on the day of the homicide, was a mere condition which accompanied, but did not cause, the injury. Like the presence of the freight in the depot at Lincolnton when the depot was accidentally destroyed by fire (*Extinguisher Co. v. Railroad,* 137 N. C., 278), or the lumber on the right of way of the railroad at Elk Park when the hotel was destroyed by fire (*Bowers v. Railroad,* 144 N. C., 684), the absence of Lonnie Rader from the hospital was a mere condition which 'accompanied, but did not cause, the injury.

Counsel pertinently ask, is the absence of the policeman from his beat and this dereliction of duty on his part the cause of the burglary which happens in his absence and which his presence would have prevented? Is the act of the Governor, who pardons a criminal, the cause of the homicide which such criminal subsequently commits? Is the conduct of the judge or justice in declining to remove a prisoner to another jail for safe-keeping the cause of the death of the prisoner in the event he is hanged by a mob?

The judgment sustaining the demurrer is
Affirmed.