## KENDRICK v. UNITED STATES.
### No. 6163.

United States District Court
N. D. Alabama. S. D.

Feb. 4, 1949.

Gibson & Hewitt, of Birmingham, Ala., and Lipscomb & Brobston, of Bessemer, Ala., for plaintiff.

John D. Hill, U. S. Atty., and W. R. Bradford, Asst. U. S. Atty., both of Birmingham, Ala., for defendant.

LYNNE, District Judge.

This cause, coming on to be heard, was submitted upon defendant's motion for a summary judgment pursuant to the provisions of Federal Rules of Civil Procedure, Rule 56, 28 U.S.C.A., the plaintiff, in open court, having waived the requirement of such Rule with reference to service of the motion at least ten days before the time fixed for the hearing thereon.

It appears to the court from the pleadings and admissions on file, together with the affidavits submitted in behalf of defendant, that there is no genuine issue as to any material fact and that the only question to be resolved is whether the defendant is entitled to a judgment as a matter of law.

Plaintiff's claim arises out of the death of her husband on July 10, 1945, at the hands of one Isiah (sic) Bush, who received an honorable discharge for medical reasons from the Army of the United States on September 5, 1944. His discharge was accomplished as a result of a certificate of disability for discharge from the Veterans' Administration Facility, Danville, Illinois, dated June 21, 1944, containing a diagnosis of Psychosis, unclassified. For sometime prior to his discharge, his illness had been manifested by muteness and explosive periods of violent combative and aggressive behavior. On September 11, 1944, said veteran executed an application for hospital treatment or domiciliary care to the Veterans' Administration, Tuskegee, Alabama, and was thereupon admitted to the Veterans' Administration Facility at Tuskegee, Alabama, on September 14, 1944. At this hospital, a

diagnosis of Psychosis, with constitutional psychopathic state, was established by the neuropsychiatrists after consultation.

On December 29, 1944, the mental and physical condition of said veteran having shown improvement during the course of his hospitalization, he was presented to the neuropsychiatric staff conference of said hospital and after deliberation, said conference determined that said veteran had received maximum benefits from his period of hospitalization after utilization of all available therapy resources, and that his condition had obtained the maximum improvement. It was further determined by the entire staff conference that the condition of said veteran was not such as to render him dangerous to himself or to others and that he should be discharged from said hospital. In effecting the discharge of said veteran, the instructions and directions contained in Veterans' Administration regulations and procedures [1] then in effect were followed in complete and exact detail. The discharge of said veteran was effected on January 6, 1945.

The regulations referred to above were in effect at all times pertinent to this suit and were issued by the Administrator of Veterans' Affairs under the authority granted to him by Veterans' Regulation No. 6(a), Paragraph V, promulgated by the President of the United States by Executive Order No. 6232, dated July 28, 1933, 38 U.S.C.A. c. 12 note. The basic authority of the Administrator to promulgate these regulations is to be found in Title 38 U.S.C.A. § 426.[2]

Plaintiff contends that the death of her husband proximately resulted from the negligence of the officers and employees of the Veterans' Administration Facility at Tuskegee, Alabama, in releasing the said Isiah Bush, well knowing that his psychotic condition might be manifested in homicidal tendencies.

Plaintiff filed her suit in this court under the Federal Tort Claims Act and the defendant contends that it falls within the exception established by Sub-paragraph (a) of Section 943, Title 28 U.S.C.A. § 2680.

Before the enactment of the Federal Tort Claims Act, it was well established in our jurisprudence that the performance by executive officers of discretionary governmental duties intrusted to them by statute was not subject to judicial review. This principle has been reiterated often in actions, such as that at bar, for damages claimed to have resulted from executive action.[3]

It is elementary that an act of the Legislature which purports to relinquish the immunity of the sovereign from suit ought to receive a literal and narrow construction at the hands of the courts.[4] An obvious corollary to this proposition, with which we are here actively concerned, is that an exemption or exception which saves or reserves a part of immunity from complete surrender should be liberally construed in favor of the Government.

While it would seem that this case clearly falls within the exception,[5] certainly

[1] Regulations and Procedures concerned are: 6041, 6042, 6050, 6096, 6155, 6156, 6157, 6158, 6159, 6160, 6165, 6171, 6172, 6349, 6350, 6352.

[2] This section contains the following significant provision:

"All official acts performed by such officers or employees specially designated therefor by the Administrator shall have the same force and effect as though performed by the Administrator in person."

[3] Spalding v. Vilas, 1896, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780; Kendall v. Stokes, 1845, 3 How. 87, 11 L.Ed. 506, 833; Wilkes v. Dinsman, 1849, 7 How. 89, 12 L.Ed. 618; Yaselli v. Goff, 2 Cir., 1926, 12 F.2d 396, 56 A.L.R. 1239, affirmed 1927, 275 U.S. 503, 48 S.Ct. 155,

72 L.Ed. 395; Standard Nut Margarine Co. v. Mellon, 1934, 63 App.D.C. 339, 72 F.2d 557, certiorari denied 1934, 293 U.S. 605, 55 S.Ct. 124, 79 L.Ed. 696; Cooper v. O'Connor, 1938, 69 App.D.C. 100, 99 F.2d 135, 118 A.L.R. 1440, certiorari denied 1932, 305 U.S. 643, 59 S.Ct. 146, 83 L.Ed. 414; Brown v. Rudolph, 1928, 58 App.D.C. 116, 25 F.2d 540; Jones v. Kennedy, 1941, 73 App.D.C. 292, 121 F. 2d 40, certiorari denied 1941, 314 U.S. 665, 62 S.Ct. 130, 86 L.Ed. 532.

[4] United States v. Sherwood, 312 U.S. 584, 590, 61 S.Ct. 767, 85 L.Ed. 1058; Wallace v. United States, 2 Cir., 142 F. 2d 240.

[5] Denny et ux. v. United States of America, 5 Cir., 171 F.2d 365.

432

the temptation is present to explore the limits of the Government's reserved immunity against claims based on the exercise or failure to exercise or perform a discretionary function or duty on the part of a Federal agency or an employee of the Government, whether or not the discretion involved be abused. It is my opinion that the broad terms of the Act effect only the removal of the procedural bar to a suit against the United States and that they do not create a new liability where none existed under the substantive law theretofore.[6] It might be argued that the exception with which we are concerned is unnecessary and that it was inserted only out of an abundance of caution as a storm signal to the courts lest they use the tool of construction to whittle away rights of a purely governmental nature, which exist apart from the concept of sovereign immunity and which Congress did not intend to yield.

It may be that the limits of this exception are capable of measurement by a simple test where the liability of the Government rests, as it does here, on the doctrine of respondeat superior. The Government could not be liable under the substantive law unless the servant might also be held liable thereunder. (The converse of this proposition is not necessarily true. There may be cases in which the facts would impose a personal liability on the servant under circumstances in which the Government, as master, would not be liable.)

■ As applied to the factual situation in the case at bar, it would seem clear that the Manager of the Veterans' Administration Facility at Tuskegee and the psychiatrists who constituted the conference which recommended the discharge of the veteran from further hospitalization for his mental condition, whose acts were performed in strict accordance with the letter and spirit of the regulations by which they were governed, could not be held personally liable in an action of this kind. And this is because the substantive or common law, for reasons of public policy, recognizes their immunity from civil suits for damages for acts done by them in the performance of their official duties enjoined upon them by law and regulations having the force and effect of law.[7]

The reasoning of the court in Spalding v. Vilas, supra, lends adequate support to this conclusion. A few of many other cases of like import are cited below.[8]

It follows that defendant is entitled to a summary judgment on its motion. An order will be presented and entered in accordance with this opinion.

---

[6] Atchley v. Tennessee Valley Authority, D.C., 69 F.Supp. 952.

[7] Bollinger v. Rader, 151 N.C. 383, 66 S.E. 814, 134 Am.St.Rep. 999; Emery v. Littlejohn, 83 Wash. 334, 145 P. 423, Ann.Cas.1915D, 767; Cappel v. Pierson, 15 La.App. 524, 132 So. 391.

[8] Lang v. Wood, 67 App.D.C. 287, 92 F.2d 211; Glass v. Ickes, 73 App.D.C. 3, 117 F.2d 273, 132 A.L.R. 1328; Gibson v. Reynolds, D.C., 77 F.Supp. 629.