**SMART v. UNITED STATES.**

Civ. A. No. 5552.

United States District Court
W. D. Oklahoma.

April 30, 1953.

Dudley, Duvall & Dudley, Oklahoma City, Okl., for plaintiff.

B. Andrew Potter, Asst. U. S. Atty., Oklahoma City, Okl., for defendant.

WALLACE, District Judge.

The plaintiff, Francis Irene Smart, brings this action against the United States of America pursuant to the Federal Tort Claims Act[1] to recover for personal injuries she received when she was struck by a car being negligently driven by one Ralph Edward Dungan. Plaintiff alleges that the said Ralph Dungan was a mental patient traveling to his parents' home in Phœnix, Arizona, on a "trial visit" from the Veterans' Administration Hospital in Marion, Indiana, and that the officials and employees of the hospital were guilty of negligence in permitting Dungan to travel home unaccompanied.

The Government has filed a motion to dismiss claiming that 28 U.S.C.A. § 2680(a) provides immunity from an action of this character. The statute states in part:

"Exceptions. The provisions of this chapter and section 1346(b) of this title shall not apply to—

"(a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

This motion to dismiss has been converted into a request for summary judgment; and briefs together with exhibits have been submitted by both parties.[2]

For the purpose of this motion the allegations of the complaint must be taken as true and unless it appears with absolute certainty that the plaintiff is not entitled to relief upon any theory the request for summary judgment should be denied.[3]

The Tort Claims Act subjects the Government to liability for torts in the same manner and to the same extent as a private person.[4] Consequently, no cause of action will lie against the Government

---

1. 28 U.S.C.A. §§ 1346(b), 2671 through 2680.

2. 28 U.S.C.A., Rule 12, Fed.Rules Civ. Proc. provides in part: " * * * If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

Rule 56 dealing with Summary Judgment provides in part: "(c) *Motion and Proceedings Thereon.* The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. * * *"

3. Vrooman v. Beech Aircraft Corp., 10 Cir., 1950, 183 F.2d 479; Garbutt v. Blanding Mines Co., 10 Cir., 1944, 141 F. 2d 679; Eberle v. Sinclair Prairie Oil Co., D.C.Okl., 1940, 35 F.Supp. 296.

4. 28 U.S.C.A. § 2674 provides: "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." Also, see United States v. Gaidys, 10 Cir., 1952, 194 F.2d 762; United States v. Gray, 10 Cir., 1952, 199 F.2d 239.

unless the employees themselves are personally liable, inasmuch as the Government's liability is founded upon the theory of "respondeat superior."

■. Unquestionably, 28 U.S.C.A. § 2680(a) requires Government employees to follow the pertinent statutes and regulations with due care; and, where Government employees accept a patient into a hospital they have a duty to refrain from negligence in the manner in which the care, custody and treatment is administered to the patient.[5]

■ However, the instant case involves the question of the exercise of discretionary judgment regarding the release of a patient from immediate custody and supervision. Doubtless, a private person, who voluntarily assumes the custody and control of an insane person has a duty to exercise ordinary care in supervising and caring for such incompetent and must not be guilty of a careless supervision where it may reasonably be foreseen that damage or injury to a third person may result.[6]

In the case at bar the Government officials in the exercise of their discretion determined it would be proper to permit the patient to be released from their immediate custody and control for a "trial visit" home. On principle the exercise of such discretion is no different from where a hospital official determines a patient fit for outright release.

In Kendrick v. United States[7] where there was an outright release of the patient, the court said:

"As applied to the factual situation in the case at bar, it would seem clear that the Manager of the Veterans' Administration Facility at Tuskegee and the psychiatrists who constituted the conference which recommended the discharge of the veteran from further hospitalization for his mental condi-

tion, whose acts were performed in strict accordance with the letter and spirit of the regulations by which they were governed, could not be held personally liable in an action of this kind. And this is because the substantive or common law, for reasons of public policy, recognizes their immunity from civil suits for damages for acts done by them in the performance of their official duties enjoined upon them by law and regulations having the force and effect of law."

Counsel for plaintiff emphasizes that in any event in order to stay within this area of governmental immunity the acts of the employees must be "performed in strict accordance with the letter and spirit of the regulations by which they were governed"; counsel points out further that R & PR No. 6159(B)[8] of the governing regulations requires the hospital manager to notify the person assuming responsibility for the mental patient "informing him of the condition of the patient", and that the exhibits before the Court affirmatively show such notification was not given the parents of the subject patient; and, that failure to give such notice violates a pertinent regulation and strips the violator of any claim of governmental immunity.

The Court has considered this question carefully, but believes such a position untenable.

R & PR No. 6159(B) provides:

"If at the time of such request for release, the patient is incompetent and his discharge would not be in his interest or that of the public, the manager will immediately communicate, in order of preference with the guardian, if any, or the nearest relative, if any, or the representative (especially the person who may have signed Form P–10 applying for hospitalization of the papatient), *notifying the correspondent*

---

5. United States v. Gray, fn. 4 supra; Costley v. United States, 5 Cir., 1950, 181 F.2d 723; Grigalauskas v. United States, D.C.Mass., 1951, 103 F.Supp. 543.

6. Fisher v. Mutimer, 1938, 293 Ill.App. 201, 12 N.E.2d 315; Emery v. Little-

john, 1915, 83 Wash. 334, 145 P. 423. Cf. United States v. Gray, fn. 4 supra.

7. D.C.Ala., 1949, 82 F.Supp. 430, 432.

8. Rules and Procedure of the Veterans Administration. See stipulation, Exhibit M.

*of the request for release, informing him of the condition of the patient and asking to be notified, in writing, whether, if release is effected, the correspondent is prepared to assume charge of the patient and be responsible for his care and treatment and all expense connected therewith. * * *"* (Emphasis supplied.)

If section (B) is read alone it might appear that the subject patient fell within its purview and that the parents of the subject patient were to be notified of the patient's condition. However, section (B) must be read and construed in light of section (A) immediately preceding it which provides:[9]

"Action when release from a facility of a psychotic patient, not held under commitment, is requested by or on behalf of the patient, will depend upon his mental condition. If he is mentally competent at the time, and can safely be released in his own interest and that of the public, his discharge will be effected; *or if judged advisable, he may be permitted a* trial visit." (Emphasis supplied.)

■■ Thus, clearly it is within the discretionary authority of the hospital manager to determine if such "trial visit" be advisable, and if it is "judged advisable" under section (A) regarding any particular patient, section (B) could have no application to such patient. Section (B) only applies to an incompetent whose discharge is deemed to *not* be in the interest of the patient or the public. Obviously, when such a condition exists, before a patient can be released, the person requesting the release must be given the full particulars and given to understand the scope of the responsibility being accepted.

Other related regulations confirm this interpretation. R & PR No. 6167(D)(2) provides:[10]

"Before a patient is sent on trial visit, preliminaries must be disposed of. * * * The consent of the guard-ian, relative or other responsible representative, to the proposed trial visit will next be procured through execution of Form 2832, Responsibility for Custody of Patient, which will be filed in the facility correspondence file relating to the patient. *The manager will provide the necessary funds to the patient* or the person into whose custody the patient is released, as provided by R and PR 1278(A). * * *" (Emphasis supplied.)

R & PR 1278 provides:[11]

"Funds Available to Beneficiary on a Trial Visit or upon Discharge. (A) The amount which shall have been paid the Chief Officer of an institution to be expended for the benefit of an incompetent or insane beneficiary may be made available by the chief officer for the use of the incompetent of the accrued funds, which in the judgment of the chief officer is thought necessary, *may be paid to a beneficiary who is without a guardian, when departing on trial visit,* provided he is regarded as competent to disburse the money with ordinary prudence. If, at the time of his departure upon a trial visit, there is any doubt as to the competency of the beneficiary to disburse properly such funds or for any other good reason the chief officer considers it inadvisable to give the money to the beneficiary himself, a proper amount may be paid to the person into whose custody the beneficiary is released on a trial visit for the benefit of the beneficiary. * * *" (Emphasis supplied.)

■ The unmistakable implication of the two regulations, just quoted, is that in many instances, so-called incompetents will be sent home for "trial visits" unaccompanied. The hospital manager must in the exercise of his discretion determine whether the patient can safely travel alone at the time of the "trial visit" and also determine whether the patient is competent to disburse funds. The sole and unqualified authority to make these decisions must

9. See stipulation, Exhibit M.
10. Ibid.

11. Ibid.

be vested in those government employees who alone know all the circumstances and are specifically qualified to act. Immunity must attach to their discretion thus exercised.

It should be noted that even if the regulations could be interpreted to require that the person taking the responsibility for the patient must be advised of the patient's condition, that there was compliance in the instant case.

The parents had been in close touch with the hospital officials as evidenced by the letters of correspondence attached to stipulation, marked EXH L–1(a) through L–1(e).

On May 18, 1951, the parents were advised that a proposed "trial visit" was to be cancelled and were given the reasons therefor.[12]

Letters were also written to the parents on June 28, 1951,[13] and August 22, 1951,[14] describing the development and general condition of the patient.

Subsequently, when the hospital officials advised the parents that a "trial visit" was to be granted and requested that the "Responsibility for Custody of Patient", Form 2832 be signed, the parents were well aware of the general condition of their son.[15]

It appears to the Court that the conclusion reached herein is the only reasonable one.

P & PR 6167(D)(1) provides:[16]

"Trial visits are to be encouraged, not only because they are in the interest of the patients, but for clearance of available beds to accommodate other psychotic applicants. Managers, chief medical officers and clinical directors will at all times have this administrative objective in view. Requests for grant of trial visits from relatives of patients will have liberal consideration, but will not be awaited; the initiative should be taken by the station, as planned part of treatment."

▇▇▇▇ The subject patient at the time of being released for a trial visit had no record of previous violence and from the submitted evidence it appears that the Staff Conference ruling on October 10, 1951, granting a 90-day "trial visit", to leave unaccompanied when responsibility form has been returned, certainly was justified.[17] Even if some might disagree with the judgment of the hospital medical officials, including this Court, their exercise of discretion so long as it follows the governmental rules and regulations cannot be interfered with, and the sovereign immunity in regard to this function must be preserved.[18]

The defendant's motion for summary judgment should be sustained.

Counsel will please submit an appropriate order within ten days.

12. See stipulation, EXH L–1(e).

13. See stipulation, EXH L–1(b).

14. See stipulation, EXH L–1(d).

15. See stipulation, EXH K and L.

16. Fn. 9 supra.

17. See stipulation, EXH F, G and J.

18. In referring to the immunity provision of the Tort Claims Act, 28 U.S.C.A. § 2680(a) the court in the Kendrick case said: " * * * the broad terms of the Act effect only the removal of the procedural bar to a suit against the United States and * * * they do not create a new liability where none existed under the substantive law theretofore. It might be argued that the exception with which we are concerned is necessary and that it was inserted only out of an abundance of caution as a storm signal to the courts lest they use the tool of construction to whittle away rights of a purely governmental nature, which exist apart from the concept of sovereign immunity and which Congress did not intend to yield."

Also cf. Chournos v. United States, 10 Cir., 1952, 193 F.2d 321.