**Maria Edolina GARZA, Individually and as mother and next friend of Gilberto Garza, III, a minor, Plaintiff.**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. No. 74–276–D.**

United States District Court, W. D. Oklahoma, Civil Division.

Dec. 12, 1975.

Robert D. Baron, Oklahoma City, Okl., for plaintiff.

O. B. Johnston, III, Oklahoma City, Okl., Ignazio J. Ruvolo, Trial Atty., U. S. Dept. of Justice, Washington, D. C., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

Plaintiff proceeds herein against the United States of America under the Federal Tort Claims Act (Act), 28 U.S.C. §§ 2671 et seq. Jurisdiction is based on 28 U.S.C. § 1346(b). Plaintiff is the widow of a Federal prison inmate who was confined in the United States Reformatory at El Reno, Oklahoma, during February, 1973. On February 14, 1973 Plaintiff's decedent was stabbed and killed by an unknown inmate(s). Plaintiff sues the Federal Government claiming that the death of her decedent was caused by negligence on the part of the Government employees working at said Reformatory at the time and place involved. Specifically, Plaintiff asserts as her ground of recovery:

"In that the defendant knew or should have known, that the plaintiff's deceased was in danger of being attacked and killed by another inmate or group of inmates (hereafter, 'attacker') and failed to take adequate and reasonable safeguards and precautions to prevent the said attack on plaintiff's deceased."

In Plaintiff's Suggested Findings of Fact and Conclusions of Law Plaintiff would have the Court find:

"A prudent and reasonable prison administration, having the information available to it that was available to the officials of the El Reno Federal Reformatory prior to the fighting which caused the death of the plaintiff's deceased could have stationed additional guards in the area of the South Compound and particularly the area of the exit to the cafeteria, prior to the time plaintiff's deceased was fatally stabbed."

On February 13, 1973 around 5:30 p.m. there was a disturbance in the south compound area in the way of a fight between about a dozen Black and Chicano inmates over a homosexual who had recently arrived at the institution. The inmates identified in this incident were placed in segregation. The homosexual was identified and segregated. The Plaintiff's decedent was not involved in this incident. All inmates were immediately ordered to quarters when this disturbance began and normal activities were cancelled for that evening. An emergency standby squad was formed. This squad included between 12 and 20 correctional officers with appropriate equipment. Officer coverage was doubled that night in the dormitories. The compound area was shaken down. The Lieutenant on duty that night made the rounds of all the housing units talking with officers and inmates to gauge the depth of the problem and the attitude of the inmate population. There was a meeting of the Reformatory officials about the situation. It developed therefrom that breakfast on February 14, 1973 would proceed on a normal basis but would be closely observed and a normal workday would follow unless the situation otherwise dictated. The emergency squad was disbanded for the day as a full complement of correctional officers would be on duty during the day. Breakfast proceeded as usual as did the following workday without incident. It was decided to follow normal pro-

cedure for the evening meal and the recreational period thereafter. However, the emergency squad was again activated at 4:00 p.m. and all officers were told to be especially sensitive to the situation and report any signs of trouble.

Between 4:30 and 5:00 p.m. a group of Blacks entered the south compound and attacked a group of Chicanos. About this time Plaintiff's decedent who had been eating supper in the messhall left the messhall to cross the south compound to enter his dormitory when he was attacked by some of the Blacks and killed. There were two officers stationed in the south compound area. A telephone was nearby. They immediately reported the fight, the emergency squad proceeded to the area with reasonable promptness as did other prison officials, the inmates dispersed, Plaintiff's decedent made his way into the dormitory and he died soon thereafter. The identity of his assailant(s) has not been ascertained to this date.

■ Inmates and their estates have a right of action against the United States for injury or death under the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 2671 et seq. Under 28 U.S.C. § 2674 the United States shall be liable in the, "same manner and to the same extent as a private individual under like circumstances." However, the Government is not an insurer of the safety of Federal prisoners and the burden is on a plaintiff to establish by a preponderance of the evidence negligence or a failure to exercise ordinary care under the circumstances on the part of agents and employees of the United States before the United States is liable under said Act. *United States v. Muniz,* 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963); *Johnson v. United States Government,* 258 F.Supp. 372 (E.D.Va.1966); *Williams v. United States,* 384 F.Supp. 579 (DC 1974). In this connection in an annotation entitled "Liability of Prison Authorities For Injury to Prisoner Directly Caused by Assault by Other Prisoner", 41 A.L.R.3d 1021, § 4(a) at page 1028, the author says:

"It has been recognized either expressly or impliedly in many of the cases within the scope of this annotation, and denied by none, that in the absence of a statute to the contrary, the duty owed to prisoners is that of reasonable and ordinary care."

At the Pretrial Conference herein a discussion was had on the need for expert testimony regarding the standard of care required of the prison authorities under the facts and circumstances of this case. The parties briefed the proposition and after reading the briefs the court advised the parties by letter (filed herein on August 1, 1975) that it felt that expert testimony was necessary as follows:

"August 1, 1975

Mr. Robert D. Baron
Attorney at Law
623–626 Cravens Building
Oklahoma City, Oklahoma

Mr. O. B. Johnston, III
Assistant U. S. Attorney
Federal Building
Oklahoma City, Oklahoma 73102

Re: USDC WD of Oklahoma Case No. 74–276–D Civil Maria Edolina Garza v. United States of America

Gentlemen:

The Court has considered the Briefs submitted by the parties on whether the Plaintiff is required to present expert testimony to establish the standard of care applicable in this case. The standard involved is the duty the Defendant United States owed to Plaintiff's decedent while he was incarcerated in Defendant's prison.

The rule set out in 31 AmJur 2d Expert and Opinion Evidence § 150 appears to apply under the circumstances involved herein as to the management of a prison facility. Said rule is stated to be:

' "In cases in which the situation or condition with regard to the safety or dangerous character of places, machines, or appliances, is one which is beyond the realm of common experience, witnesses not shown to have any

special skill or knowledge are incompetent to testify as to such matters." '

In applying said rule to the issues raised in the instant case relating to conditions present in the operation of a prison, the same would appear to be beyond the realm of common experience. The Court is of the present opinion that the parties should present expert testimony as to the standard of care required at the time and place involved herein and the presence or absence of such care.

Very truly yours,

[/s/]

Fred Daugherty

United States District Judge

cc: Clerk of the Court for the Western District of Oklahoma"

■ Plaintiff did not present any expert testimony as desired by the Court. In fact, Plaintiff presented no evidence that in the discharge of the duty to exercise ordinary care, the responsible agents of Defendant should have stationed more than two correctional officers in the south compound before and at the time Plaintiff's decedent was assaulted. The Court did not grant Defendant's Motion to Dismiss Plaintiff's action at the close of Plaintiff's evidence for failure to present such evidence though it is felt that it may well have sustained said Motion.[1] Defendant presented a qualified expert in prison management who testified that under the facts and circumstances of this case the responsible prison authorities handled same commendably and with ordinary care and prudence in keeping with appropriate correctional practices.

■ The Court finds and concludes under the facts and circumstances of this case that the responsible prison officials at the Federal Reformatory were not guilty of failing, "to take adequate and reasonable safeguards and precautions to prevent the said attack on plaintiff's deceased," as claimed by Plaintiff. As heretofore stated, Defendant is not an insurer of the safety of Federal prisoners. By hindsight the death of Plaintiff's decedent may have been averted for example by locking and feeding all prisoners in their cells on the day of February 14, 1973. However, too much lockup can be as inappropriate in prison management as too little lockup. It is believed that the prison authorities following the February 13, 1973 incident acted with ordinary care and prudence the balance of that day and the next day under recognized prison procedures in their management of the prison populace including the Plaintiff's decedent. The suddenness of the incident in the south compound that immediately proceeded the death of Plaintiff's decedent as well as the spontaneous nature of the act or acts by which Plaintiff's decedent was killed and the inability to establish the identity of his killer or killers and the happenstance of Plaintiff's decedent being where he was at the time involved all require the conclusion that something more than ordinary care and prudence would have been necessary to have prevented the unfortunate but unforeseeable death of Plaintiff's decedent at the hands of his assailant(s).

During the trial the Court made inquiry of just what could have reasonably been expected of prison officials under the situation involved to have prevented the death of Plaintiff's decedent. As Plaintiff's decedent was not involved in the incident of February 13, 1973 and was not a known target in danger of possible attack by prison inmates it was not suggested that he should have been locked up and fed in his cell. Instead of reverting to normal procedures on February 14, 1973, all inmates could have been confined to their cells and fed therein. But no one testified that such was required under the circumstances of this case in the exercise of ordinary care and prudence in prison management. Nor, as aforesaid, was there any evidence that in the discharge of ordinary care more than

---

1. Under Oklahoma law a person is not liable without proof of actionable negligence. *Nicholson v. Tacker*, 512 P.2d 156 (Okl.1973). In *Shew v. United States*, 116 F.Supp. 1 (M.D.N.C. 1953) and *Van Zuch v. United States*, 118 F.Supp. 468 (ED NY 1954) the Government was held not liable for prisoner injuries because no negligence was established on the part of the Government.

two correctional officers should have been stationed in the south compound under the circumstances presented on the evening of February 14, 1973. See 41 A.L.R.3d § 1021, *supra,* at § 15 page 1047.

The Court finds and concludes herein that neither such cell confinement or placing of more correctional officers in the south compound was required in the exercise of ordinary care and prudence under the facts of this case. The Court finds and concludes that the prison authorities and correctional officers involved did not violate the duty owed to Plaintiff's decedent to exercise reasonable or ordinary care to prevent his death.

Moreover, the matter of stationing more correctional officers in the south compound area on February 14, 1973 would involve the exercise of discretion on the part of prison authorities.

18 U.S.C. § 4042 provides:

"Duties of Bureau of Prisons

The Bureau of Prisons, under the direction of the Attorney General, shall—

(1) have charge of the management and regulation of all Federal penal and correctional institutions;

(2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;

(3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States;

(4) provide technical assistance to State and local government in the improvement of their correctional systems."

28 U.S.C. § 2680(a) provides that the Act shall not apply to a claim, "based upon the exercise of performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved the abused."

Plaintiff has presented herein no qualified testimony or any other evidence as to what the prison authorities should have done which they failed to do in the exercise of ordinary care which would have prevented the death of Plaintiff's decedent. After an evaluation of the situation the night of February 13, 1973, the decision was made by those in authority to not order a lockup the following day but to return to normal procedures with the added precautionary measures heretofore alluded to. This decision was made at the planning level in this institution. It would appear to the Court that this decision conformed to the duty to exercise ordinary care under the circumstances and also was discretionary within the meaning of 28 U.S.C. § 2680(a). *United States v. Muniz, supra; Morton v. United States,* 97 U.S.App.D.C. 84, 228 F.2d 431 (1955); *Boulware v. Parker,* 457 F.2d 450 (3rd Cir. 1972); *Samurine v. United States,* 287 F.Supp. 913 (D.Conn.1967), aff'md. 399 F.Supp. 160 (Second Cir. 1968); *Cohen v. United States,* 252 F.Supp. 679 (N.D.Ga.1966); *Smart v. United States,* 111 F.Supp. 907 (W.D.Okl.1953), aff'md. Tenth Cir., 207 F.2d 841 (1953).

Accordingly, as Plaintiff has failed to establish negligence by a failure to exercise ordinary care on the part of prison officials to prevent the death of Plaintiff's decedent and additionally as the matter of putting more correctional officers in the south compound, as suggested by Plaintiff, would constitute an exercise of discretion on the part of responsible prison officials at the planning level and will not support a recovery under the Act, Judgment should be entered herein dismissing Plaintiff's action.