421 So.2d 1169 (1982)
Alma LaVerne FRAIN as Tutrix of the Minor Child, Kelly Anne BEASON, Plaintiff/Appellant,
v.
STATE FARM INSURANCE COMPANY, et al., Defendants/Appellees.
No. 15019-CA.
Court of Appeal of Louisiana, Second Circuit.
October 25, 1982.
*1170 Cryer & Harp by Tommy K. Cryer, Shreveport, for plaintiff/appellant.
Lunn, Irion, Switzer, Johnson & Salley by Julie Mobley, Shreveport, for defendants/appellees, Diane Hickman and State Farm Ins. Co.
Mayer, Smith & Roberts by A.J. Gregory, Jr., Shreveport, for defendant/appellee, Liberty Mut. Ins. Co.
Before HALL, FRED W. JONES and SEXTON, JJ.
SEXTON, Judge.
This is an appeal from the trial court's decision to sustain a peremptory exception of no cause of action in a suit for the wrongful death of Deborah S. Grubbs. The suit was filed by Alma LaVerne Frain as the tutrix of Ms. Grubbs's minor daughter, Kelly Beason.
The facts which gave rise to Ms. Frain's suit, as delineated in plaintiff's petition, may be simply stated. At the time of her death, decedent Deborah Grubbs was a patient at Schumpert Medical Center in Shreveport, Louisiana. Deborah Grubbs was suffering from a severe emotional disorder and this condition was being treated with drugs at the Schumpert Medical Center. On August 27, 1980, decedent was allowed out of the medical center on a temporary "pass." On the same date, Diane E. Hickman loaned a 1979 Oldsmobile Cutlass to Ms. Grubbs. The tragic result of these circumstances was summarized in plaintiff's petition as follows:
"Sometime after 12:00 midnight and before 1:18 o'clock a.m., on August 28, 1980, decedent was driving the borrowed car in a northbound direction on Mansfield Road in Shreveport, Louisiana, when her vehicle left the road and struck a concrete abutment."
Ms. Grubbs died as a result of injuries received in the collision.
Plaintiff, Alma Frain, tutrix of Ms. Grubbs's surviving daughter, alleged in her petition that Deborah Grubbs negligently contributed to her own death by driving while suffering from a severe emotional disorder and while under the influence of drugs, and by failing to maintain control of her car. Plaintiff further alleged that Diane E. Hickman negligently contributed to Ms. Grubbs's death by loaning the late model car to Ms. Grubbs while knowingor at such time as she should have knownthat Ms. Grubbs was then being treated with *1171 drugs for a severe emotional disorder. Thus, the essence of plaintiff's civil suit is that the negligence of both Ms. Grubbs and Ms. Hickman causally combined to deprive Ms. Grubbs of her life and Kelly Beason of her mother, thus conferring upon Miss Beason a wrongful death action in the amount of $600,000.00 for mental anguish, and the loss of future support and companionship. Plaintiff has accordingly joined three defendants: (1) Ms. Grubbs's insurer, Liberty Mutual Insurance Company, (2) Diane E. Hickman, and (3) Ms. Hickman's insurer, State Farm Mutual Automobile Insurance Company.
Defendant Liberty Mutual Insurance Company filed a peremptory exception of no cause of action. Defendant Diane E. Hickman and her insurer State Farm Mutual Automobile Insurance Company similarly responded by filing a peremptory exception of no cause of action. Plaintiff's claims against Ms. Grubbs's insurer Liberty Mutual were settled, leaving plaintiff to litigate her claims against the remaining two defendants, Diane E. Hickman and her insurer State Farm Mutual Automobile Insurance Company.
Plaintiff's suit against the remaining defendants was defeated when the trial court sustained defendant's peremptory exception of no cause of action on November 25, 1981.
The peremptory exception of no cause of action is appropriately sustained only when, assuming the allegations of plaintiff's petition to be true, plaintiff has not stated a claim for which he can be legally compensated under the applicable substantive law. See LSA-C.C.P. Art. 927; Johnson v. Edmonston, 383 So.2d 1277 (La. App. 1st Cir.1980); Guillory v. Nicklos Oil & Gas Co., 315 So.2d 878 (La.App. 3d Cir. 1975). In determining whether plaintiff's petition failed to state a cause of action, this court must assume the truth of plaintiff's allegations and apply the pertinent substantive law to the facts alleged. Having done so we conclude that plaintiff's petition does state a cause of action under the applicable law, and that the trial court's decision to sustain the peremptory exception must therefore be reversed.
The question to be resolved herein is the same as posed by Professor Johnson in his analysis of Callais v. Allstate Insurance Co., 334 So.2d 692 (La.1975):
"The real issue to be resolved is whether the rule which requires the defendant to avoid a wrongful killing of the victim includes a killing which is produced in part by the defendant's conduct and in part by the victim's conduct. If it does not, then the conclusion will be no liability, and we can expect that the court will express that as often as not by saying simply that the contributory negligence of the victim bars recovery by the beneficiaries." Johnson, Death on the Callais Coach: The Mystery of Louisiana Wrongful Death and Survival Actions, 37 La.L. Rev. 1, 45 (1976).
It will be recalled that in Callais the decedent was the only negligent party and accordingly the holding was:
"Thus, we hold that a child may not recover damages for a parent's death when the death resulted solely from the deceased parent's lack of care for his own safety." Callais, supra, at 701. (emphasis added).
However, Professor Johnson was asking the same question which the First Circuit answered in the negative in Olinde v. American Employers Insurance Co., 376 So.2d 1027 (La.App. 1st Cir.1979). In Olinde the decedent and the defendant had been drag racing at speeds over 70 miles per hour. Because of an approaching vehicle the defendant attempted to slow down and pull in behind the decedent. The First Circuit noted that a factual question existed as to whether there was a collision as a result of the defendant's maneuver. In any case, the decedent lost control of his vehicle which struck a tree, causing his death. Noting with approval Professor Johnson's Callais analysis, and repudiating the imputed contributory negligence concept of Vitale v. Checker Cab Company, Inc., 166 La. 527, 117 So. 579 (1928), the court, in the following terms, found that any duty which the defendant had under these circumstances *1172 would not extend to the decedent's beneficiaries:
"Simply stated, the courts have adopted the policy that the beneficiaries of a decedent who aided or contributed to his own demise cannot recover for the wrongful death of the decedent. This is true whether we use the rubric of imputed contributory negligence, duty-risk, or even assumption of the risk.

"Vitale should be repudiated not because of the result, which is correct, but because of the use of the imputed contributory negligence theory. The courts in this state began to come of age with Dixie Drive It Yourself System New Orleans Co., Inc., v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962), when we began speaking in terms of duty-risk. If the duty-risk analysis had been applied to the Vitale facts the same result would have been reached, because `the risk that the beneficiaries will be harmed by the conduct of the defendant which combines with the conduct of the victim to produce the victim's death is simply beyond the standard which we choose to apply to the defendant.'..." Olinde, supra, at 1029.
Through two assignments of error the plaintiff here contends that Act 431 of 1979 which returned comparative negligence to our legal system legislatively overruled Callais and Olinde. Recall that the plaintiff herein alleges both the negligence of this decedent as well as the negligence of the defendant who loaned the vehicle. Thus the plaintiff asserts that as a result of Act 431 of 1979 plaintiff should recover, but have that recovery reduced by the extent of the negligence of her deceased mother.
In providing the concept of comparative negligence for our law, LSA-C.C. Art. 2323 states, "When contributory negligence is applicable to a claim for damages, its effect shall be as follows:..." In reviewing the effect of comparative negligence on our current duty/risk tort concept Professor Johnson noted in his very excellent article Comparative Negligence and the Duty/Risk Analysis, 40 La.L.Rev. 319 (1980):
"For this purpose, tort cases may be divided into three broad categories: (a) those in which a defendant's duty extends to the protection of a plaintiff against his own carelessness; (b) those in which defendant is not liable because the plaintiff's conduct has produced a situation for which the law should not require a reasonably prudent person to prepare and respond; and (c) those that fall in neither category, in which the victim's fault and the defendant's fault may each be weighed in the balance." (40 La.L.Rev. at 333).
Thus the type "a" situation requires an analysis of victim fault as part of the measurement of the defendant's duty. See Baumgartner v. State Farm Mutual Insurance Company, 356 So.2d 400 (La.1978), Boyer v. Johnson, 360 So.2d 1164 (La.1978), and Rue v. State Department of Highways, 372 So.2d 1197 (La.1979). Type "b" cases are obviously susceptible of the same analysis except that in those cases the result is that the plaintiff's conduct is of such a nature, or creates such a situation that the defendant has no duty to protect against those circumstances. (Clearly this was the determination in Olinde, supra.) Perhaps we can call these two types "strict" duty/risk cases. Of course the third category of cases is all of the rest, i.e., those which do not fall in either of the other two categoriesand in which case the fault of both the plaintiff and the defendant is to be considered.
Therefore Professor Johnson contends that since contributory negligence is not an issue in "strict" (type "a" and type "b") situations that comparative negligence is likewise inapplicable:

"In each instance, the duty/risk analysis is the proper vehicle by which to determine the issue of applicability of contributory or comparative negligence. This inquiry must be completed, in fact, before the tenets of Act 431 can be used. If defendant is not liable because plaintiff's conduct has created a situation such that defendant could not possibly be expected to protect him against such risks, *1173 then Act 431 is inapplicable. No recovery, even at a reduced level, would be just. On the other hand, if defendant's duty extends to the protection of persons such as this careless plaintiff, Act 431 is equally without application. Plaintiff should not under those circumstances be expected to suffer a reduction in his recovery. Thus, the sophistication reached at this point with the duty/risk analysis will continue to eliminate those instances in which the absolute-bar rule was most troublesome, and it will also protect defendants against liability where none should attach even at a reduced level." (Johnson, 40 La.L.Rev. at 339-340). (emphasis added).
In passing Act 431 of 1979 we must assume the Legislature was aware of Baumgartner, Boyer, and Rue, supra, and their progeny. Louisiana Civil Service League v. Forbes, 246 So.2d 800 (La.1971), State v. Hillebrandt, 146 So.2d 718 (La.App. 3d Cir.1962). We therefore accept and adopt the analysis of Professor Johnson, to-wit; in those "strict" situations where the defendant's duty extends to protect the plaintiff against his own carelessness, or in those situations where the defendant is not liable because the plaintiff's conduct creates circumstances for which the law should not require a prudent person to prepare, then comparative negligence should not be invoked because contributory negligence is not an issue.[1]
Callais and Olinde, then are not overruled by Act 431 of 1979 since they are "strict" duty/risk cases and therefore do not involve contributory negligence. But recall that Callais simply holds that beneficiaries are precluded from recovery when the incident is solely the result of the decedent's negligence, and thus does not answer the issue here. Olinde, on the other hand, does respond to this issue. But we do not read Olinde to preclude the recovery of the beneficiary in all cases where the conduct of the decedent aided or contributed to his own death. If that is the holding of Olinde we would disagree with it. In our view, though, Olinde simply says that under a duty/risk analysis of the facts of that case the defendant's duty did not extend to that beneficiary. Furthermore, Olinde opined that the decedent there assumed the risk of injury and death by participation in the drag race.
As has been oft said each duty/risk analysis must be decided on its own particular facts. Thus we must determine if this defendant had a duty to protect this decedent against her own actions under these circumstances, and whether this duty extended to this plaintiff-beneficiary. We answer this question in the affirmative. We do so because of our belief that a reasonably prudent person has a clear duty to recognize the manifest danger of lending an automobile to someone the lender knows or should know is suffering from a "severe emotional disorder" and is "under the influence" of drugs. A prudent person should recognize that under these circumstances it is highly likely that serious injuries or death will foreseeably result. This same cautious person should acknowledge that those in this condition are likely to be suffering from self-destructive impulses and suffer a lack of understanding of the consequences *1174 of their actions; and more importantly are not able to rationally control their actions or thought processes.
The risk that one suffering from a severe emotional disorder and under the adverse influence of drugs poses to himself and others is obviously compounded when that individual is equipped with a dangerous instrumentality such as an automobile. The possibility that such an individual will lose control of that automobile is a highly foreseeable result of the loan, and the likelihood that an emotionally disturbed borrower will be injured or killed in the resulting mishap is precisely the danger that should cause a prudent person to perceive the loan as an unreasonable risk. The scope of the duty therefore includes this risk.
We furthermore believe that the likelihood of death as a result of the loan of an automobile under the circumstances here pled is so large that the duty a reasonably prudent person has to avoid this decedent's risk extends to this plaintiff-beneficiary. In other words, viewing this duty as we do, as obviously extending to the deceased, to not extend the duty to the decedent's beneficiary undermines the viability of defendant's duty to the deceased. If the facts as pled can be proven the defendant ignored a patently life threatening situation and should not be relieved of duty because of the death of the party to whom such a high duty to avoid an obvious risk was owed.
We therefore reverse the judgment of the trial court which sustained the peremptory exception of no cause of action and remand for further proceedings not inconsistent herewith, at appellee's costs.
REVERSED and REMANDED.
HALL, Judge, concurring in the reversal and remand.
I concur in the reversal and remand in this case because plaintiff's petition states a cause of action, and I essentially agree with the reasons expressed in the scholarly majority opinion.
One reason for this concurring opinion is my disagreement in part with the majority's treatment of the Olinde case and the effect of comparative negligence on the law expressed in that case. Using the majorityProfessor Johnson analysis, Olinde was a type "c" case, and the court correctly held, as a policy matter under the law as it existed at that time, that the beneficiaries of a contributorily negligent decedent cannot recover for the wrongful death of the decedent. With the adoption of comparative negligence, the result in a type "c" contributory negligence wrongful death action should be a reduction in the damages recoverable by the beneficiary in proportion to the degree or percentage of negligence attributable to the beneficiary and/or the victim. Expressed in duty-risk terms, the duty owed by a defendant to the beneficiary of a decedent does not afford the beneficiary a greater degree or percentage of protection than that afforded to the victim.
Another reason for the concurring opinion is to express the thought that the duty-risk analysis in Baumgartner, Boyer, Rue, and similar cases might have produced a different result had comparative negligence been the law at the time those cases were decided. Unquestionably, the total bar to recovery resulting from application of contributory negligence was an influencing policy consideration in those decisions. Certainly those cases involved a balancing or weighing of the fault of the plaintiff and the defendant. Given the Baumgartner facts today, wouldn't comparative negligence supply the fair result, say, reduction of the Baumgarter plaintiff's recovery by 10 percent? I believe that there will be type (a) cases (and the instant case may be one) where the defendant's duty is found to extend to the protection of the plaintiff against his own carelessness, thereby making contributory negligence and, in turn, comparative negligence inapplicable. I also believe, however, that most cases of the type where in the past the contributory negligence of the plaintiff was found to be within the scope of the risks encompassed in the defendant's duty and thereby not a bar to recovery, should be treated as type "c" cases and decided under comparative negligence *1175 principles. Results reached in the Baumgartner type cases before comparative negligence should not necessarily be considered as controlling under the new scheme.
In the instant case, plaintiff has set forth a cause of action for damages based on defendant's negligence. The alleged negligence of the victim would not bar recovery or even result in a reduction of recovery if it is established that the defendant's duty under the facts of this case extends to the protection of the victim against her own specific carelessness as established by the evidence in the case. If the facts develop precisely as alleged, then this may be a type (a) case in which comparative negligence should not be applied to reduce the plaintiff's recovery. However, it could well be that the facts developed at trial could throw this case into a type "c" category, and should be decided under comparative negligence rules. This determination should be made only after all the evidence is in, and will depend on the facts and circumstances of the particular case.
NOTES
[1] The inception of duty/risk in Dixie Drive It, supra, obviously came as a result of the excesses of contributory negligence. In other words duty/risk became a part of our law to allow the courts to avoid contributory negligence concepts where the plaintiff's responsibility in the overall incident was minimal. Duty/risk, of course, has subsequently become the basis of all Louisiana tort analysis. Johnson, 40 La.L. Rev., supra.

However, the author, while being forced to agree with Professor Johnson's incisive analysis because of the context in which Act 431 of 1979 was passed and the wording thereof, believes it would be much simpler and fairer, if our law allowed our tort analysis in every instance to be grounded in comparative negligence. Why not, in every case, simply compare the extent that the conduct of each party to the incident contributed to the causation thereof, and reduce that party's recovery accordingly? We would thus return to a simple fault concept, precluding the necessity of the initial duty/risk analysis to determine what type duty/risk case we have in order to determine whether or not comparative negligence should be applied.