520 So.2d 1005 (1987)
Samuel J. MAYEUX, Jr., Plaintiff-Respondent,
v.
Freddie MADDEN and Lafayette Insurance Co., Defendants-Relators.
No. W87-824.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1987.
*1006 Bolen & Erwin, James A. Bolen, Jr., Alexandria, for defendant/applicant.
David E. Stone, Alexandria, for plaintiff/respondent.
Before DOMENGEAUX, GUIDRY, and LABORDE, JJ.
LABORDE, Judge.
Defendants-relators, William Madden and Lafayette Insurance Company, (Lafayette), seek supervisory relief from an order of the Ninth Judicial District Court, the Honorable Alfred Mansour presiding, granting the defendants' exception of no cause of action in part and denying the exception in part.

STATEMENT OF THE CASE
Mr. Mayeux, the plaintiff, is a police officer employed by the Alexandria City Police Department. Mr. Mayeux, pursuant to the normal duties of his job, went to the Madden residence on July 1, 1985, to arrest Freddie Madden. Freddie Madden is the major son of William Madden and resides with William Madden. According to the petition, Freddie is mentally retarded and has the mental capacity of a seven (7) year old even though he is twenty-five (25) years old. The plaintiff's petition avers that Freddie attempted to flee the scene and avoid arrest. Injuries were sustained to the plaintiff's knee for which surgery was performed.
The initial petition only named Freddie and Lafayette as defendants; however, a supplemental and amending petition was filed naming William Madden as defendant under the theories of negligence and strict liability.
The defendants filed an exception of no cause of action with respect to the claim against William Madden. The trial court, in its written reasons, found that there was no cause of action with respect to the strict liability claim, but that there was such a cause of action with respect to the negligence claim against William Madden. The defendants have taken writs from this judgment, arguing that their exception should have been sustained in toto.

SUPERVISORY RELIEF
When the overruling of an exception is arguably incorrect, when a reversal *1007 will terminate the litigation, and when there is no dispute of fact to be resolved, judicial efficiency and fundamental fairness to the litigants dictates that the merits of the application for supervisory writs should be decided in an attempt to avoid the waste of time and expense of a possible future trial on the merits.[1]

ON THE MERITS
The issue before us is whether there exists a cause of action for damages against a parent for alleged negligence in supervising a mentally retarded child who has achieved majority and who lives with the parent.
As the trial court found, LSA-C.C. art. 2318 does not apply. That article makes a parent strictly liable for the harm caused by the parent's minors or unemancipated children:
"Art. 2318. Acts of minors
The father and the mother and, after the decease of either, the surviving parent, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons.
The same responsibility attaches to the tutors of minors."
The crucial fact in the case sub judice is that Freddie is a major as defined by LSA-C.C. art. 37. The trial court correctly found that plaintiff failed to state a cause of action under strict liability.
With regards to the negligence theory, defendants argue that no duty was owed the plaintiff by Mr. Madden, and that Mr. Madden's loss of legal control of supervision over Freddie, when Freddie achieved majority, vitiates any responsibility William Madden has as to any damage caused by Freddie. The case of Shaw v. Hopkins, 338 So.2d 961 (La.App. 4th Cir.1976) supports this position. The Court, in Shaw, was faced with a situation where the defendant's major child attacked the plaintiff, and the plaintiff alleged the vicious propensities of the defendant's son were well known by the parents. It was alleged that since the son was not interdicted or institutionalized, the parents were negligent in not protecting the public, and the plaintiff in particular. The Court stated that the plaintiff would have to prove a duty and its breach before the parents would be liable. The court further stated:
"No law has been called to our attention, and we know of none, which provides that the parents of a major child who has `vicious propensities' owe a duty to third persons to interdict or commit such a child to an institution ..."
The case was dismissed on an exception of no cause of action. Shaw, 338 So.2d at 963.
The Shaw case does not state that the son, Wright, was living with the parents at the time of the attack. In fact, Wright was judicially emancipated in 1971 at the age of eighteen, which was about two years prior to the attack. In the case sub judice, Freddie is alleged to be in the care and custody of his parents, though they are apparently not his curators, so as to invoke LSA-C.C. art. 2319. That article holds curators strictly liable for damages caused by their wards: "The curators of insane persons are answerable for the damages occasioned by those under their care."
The trial court, in deciding that plaintiff stated a cause of action on negligence grounds, relied on persuasive authority from sister states.[2] See Smart v. United States, 111 F.Supp. 907 (W.D.Okla.1953); *1008 Estate of Mathes v. Ireland, 419 N.E.2d 782 (Ind.App.1981); Sego v. Mains, 41 Colo. App. 1, 578 P.2d 1069 (1978); Fisher v. Mutimer, 293 Ill.App. 201, 12 N.E.2d 315 (1937); and Emery v. Littlejohn, 83 Wash. 334, 145 P. 423 (1915). As noted in the trial court's reasons for judgment, the common thread in all of these cases is that plaintiff's attempt to properly state a cause of action is contingent on whether the custodian of the major knew or should have known of the dangerous propensities of his charge.
Following the rationale of these cases, negligence liability can not light unless it is alleged that the charge has dangerous propensities which the custodian could reasonably foresee.
Plaintiff alleges that Freddie has a low I.Q. and that he "has been diagnosed as having a `schizophrenic' psychological disorder." The allegations in plaintiff's petition, which must be accepted as true when reviewing an exception of no cause of action, do not even intimate that Freddie Madden is dangerous. As a matter of fact, plaintiff avers in his petition for damages and supplemental and amending petition that "it was not the defendant's [Freddie's] intention to injure the arresting officer but simply to avoid capture." We fail to see how a prudent person would recognize that under the circumstances, leaving Freddie unattended while it was expected that police would arrest him, serious injury would foreseeably result. Frain v. State Farm Insurance Company, 421 So.2d 1169 (La. App. 2d Cir.1982). Plaintiff's allegations, therefore, do not state a cause of action under either strict liability or negligence.
For the above and foregoing reasons, William L. Madden's exception of no cause of action is sustained. The trial court's partial denial of the exception is reversed. We fail to see how plaintiff could remove the grounds of the objection under La.C. C.P. art. 934; therefore, plaintiff's action against William L. Madden is dismissed with prejudice. Costs are assessed to plaintiff, Samuel J. Mayeux, Jr.
WRIT GRANTED AND MADE PREEMPTORY: the trial court's denial of defendant's exception of no cause of action is reversed and the suit against defendant, William L. Madden, is dismissed with prejudice.
NOTES
[1] Herlitz Construction Co., Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981).
[2] We have found Louisiana cases where defendants have been held liable for a third person's action. See Frain v. State Farm Ins. Co., 421 So.2d 1169 (La.App. 2d Cir.1982); Morton v. American Emp. Ins. Co., 104 So.2d 189 (La.App. 2d Cir.1958). The Frain court, in concluding the plaintiff stated a cause of action, inter alia, found defendant had a "clear duty to recognize the manifest danger of lending an automobile to someone the lender knows or should know is suffering from a `severe emotional disorder' and is `under the influence' of drugs. A prudent person should recognize that under these circumstances it is highly likely that serious injuries or death will foreseeably result." Frain, 421 So.2d at 1173.